CARL W. DUNLAP v. CAROLINA POWER & LIGHT COMPANY.

(Filed 2 February, 1938.)

1. **Waters and Watercourses § 1—**

 The grantee of land bounded by a nonnavigable river or creek has riparian rights in such waters to the center thereof.

2. **Same—Each riparian owner has right to use of waters equal to rights of other riparian owners in like circumstances.**

 Riparian rights of landowners along a nonnavigable stream is a right inseparably attached to the soil itself, and each has an equal and common right to the reasonable use of the water for any purpose which does not materially affect the rights of others, the right of each to such use being the same as the right of other riparian owners in like circumstances, but what is a reasonable use for farming cannot be compared with what is a reasonable use for manufacturing or power purposes.

3. **Waters and Watercourses § 3—**

 A lower riparian owner has a cause of action against an upper proprietor for any pollution or substantial diversion of the waters of the stream.

4. **Waters and Watercourses § 2—Right of riparian owner to natural, undiminished flow of stream is qualified by rights of other proprietors to reasonable use of waters.**

 The right of a riparian owner to the natural flow of water without diminution in quantity or retardation or acceleration of the natural flow is qualified by the rights of other proprietors to the reasonable use of the waters, which use includes the right to use same for manufacturing or power purposes as well as domestic and agricultural purposes when in conformity with the size of the stream and the needs of the community, qualified only by the requirement that it must be enjoyed with reference to similar rights of other riparian owners.

5. **Same—Riparian owner using stream for power purposes has the right to diminish flow to extent reasonably necessary for this purpose.**

 Where a riparian owner is rightfully using the waters of a stream for power purposes, he is entitled to diminish, retard or accelerate the natural flow of water to the extent reasonably necessary in the lawful and beneficial use of the stream for this purpose, subject only to the like rights of lower proprietors, and a lower riparian owner is not entitled to damages for annoyance or inconvenience resulting from changes in the rate of flow from such reasonable use, but may insist only that the waters shall not be unreasonably withheld or let down by the power dam or withheld for an unreasonable length of time.

6. **Same—**

 The burden rests upon a lower proprietor to allege and prove unlawful, wrongful or unreasonable use of the waters of a stream by an upper proprietor.

DUNLAP *v.* LIGHT CO.

**7. Same—What constitutes reasonable use is ordinarily a question for the jury.**

What constitutes reasonable use of the waters of a nonnavigable stream by an upper proprietor is a question of fact.for the jury to determine in accordance with the nature and size of the stream, the object, importance, nature and necessity of the use, and the manner and occasion of its exercise, and it is only when there is no evidence tending to show an unreasonable use that the question is one for the court.

**8. Same—Evidence held insufficient to show unreasonable use of waters of stream by power company.**

The evidence favorable to plaintiff tended to show that defendant power company customarily closed the gates of its dam at night to pond water for power purposes, and opened the floodgates in the morning for operation, resulting in substantial decrease in the flow of the stream at night, and an accelerated flow of the stream in the morning until it was normal, and that plaintiff's land overflowed more frequently during freshet and -flood than formerly, resulting in damage. There was no evidence that the waters were turned into the stream in excessive amounts, and no evidence of a causal connection between the more frequent flooding of plaintiff's land and the operation of defendant's dam. *Held:* Defendant's motion to nonsuit on this cause of action was properly allowed, since the retardation of the waters only between operating hours cannot be held an unreasonable use, and since the evidence fails to show any unreasonable use of the waters by plaintiff resulting in damage to plaintiff's riparian rights.

**9. Eminent Domain § 2—Allegations and evidence held sufficient to be submitted to jury on question of power company's taking of property as result of injury to land from operation of dam.**

Plaintiff's allegation and evidence were to the effect that by reason of the situation of his land at the convergence of two streams, the alternate diminution and acceleration of the flow of water resulting from the operation of defendant's power dam on one of the streams, caused the bank between the streams owned by plaintiff to be constantly washed and eroded away. *Held:* Plaintiff is entitled to have his cause of action to recover the damages sustained in the washing away of the bank submitted to the jury on the theory that, by reason of the peculiar location of plaintiff's property, the operation of the dam resulted in a taking of plaintiff's property without just compensation, and such right of action exists even though the operation of the dam by defendant was well within its riparian rights.

APPEAL by plaintiff from *Rousseau, J.,* at September Term, 1936, of ANSON.

This is a civil action instituted by the plaintiff, a lower riparian owner, against the defendant, an upper riparian owner, to recover damages for the alleged unlawful and wrongful use of the waters of Yadkin River by the defendant and for compensation for damages to his lands, which the plaintiff alleges in effect amounts to a taking without just compensation.

Plaintiff owns a tract of land bordering on Rocky River and Yadkin River at the confluence of the two streams; the stream from the point of confluence of these two rivers to the ocean being known as Pee Dee River. The defendant has constructed a concrete dam across Yadkin River about four miles above plaintiff's land and has erected a hydro-electric generating plant adjacent to said dam, the dam and plant being known as the Tillery Hydroelectric Generating Station. The defendant, as a public utility corporation, has been operating said plant since 1928 for the generation of electricity for distribution and sale. The plaintiff alleges that the erection of said dam and the operation of said plant prevents the flow of said streams by his farm in the customary manner according to the prior natural and usual flow; that by the operation of the plant of the defendant the water of Yadkin River is at times impounded to such an extent as to cause the Pee Dee River to become dry and without water therein and that at other times the waters are discharged from the dam in such manner and to such an extent as to raise the level of the water of Pee Dee River to ordinary flood stage, which has the effect of backing the water of Rocky River up in the channel and causing such water to break through and cut sluices over the lands of the plaintiff until such water of Rocky River flows to the Pee Dee River through the artificial sluices or channels so cut rather than through the regular channel of Rocky River; that great channels have been cut across his lands in which pools of stagnant water form and cause mosquitoes and other insects and vermin to breed; that by reason of the construction and maintenance of said plant by the defendants the waters of Yadkin River do not flow to and enrich plaintiff's lands in a natural manner, but at times flow by and over them in greatly augmented quantities, causing the banks of the stream to break and wash away and it creates an unhealthful condition for him and his tenants and which interferes with the passage of the waters of the rivers through the fixed channel of said stream and deprives him of the pleasure and profit in the pursuit of fishing and the other ordinary uses of said water and results in material damage to the banks of the stream which are a part of his property, and also so damages his land that he can now harvest only one crop out of about every six planted, whereas theretofore he could harvest three out of every four planted.

At the conclusion of the plaintiff's evidence the court, on motion of the defendant, entered a judgment of nonsuit, to which the plaintiff excepted and appealed.

*A. M. Stack, W. L. Marshall, Jr., Mark Squires,* and *W. H. Strickland for plaintiff, appellant.*

*Taylor & Thomas, Robinson, Pruette & Caudle,* and *A. Y. Arledge for defendant, appellee.*

BARNHILL, J.   The plaintiff does not allege, except by inference, that the plant of the defendant is operated in a negligent or careless manner. If the complaint be construed as alleging a cause of action based on negligence the same is not sustained by the evidence, for there is no evidence of any negligent operation by the defendant. Nor does the plaintiff allege any improper or negligent or unskillful design or construction of defendant's plant, nor is there any allegation that defendant's plant is in excess of the size and capacity of the stream. This limits our consideration to two questions: (1) Is the defendant wrongfully interfering with or impairing plaintiff's rights as a riparian owner in the waters of Yadkin River? And, (2) does the operation of defendant's plant result in a taking in whole, or in part, of plaintiff's property without just compensation? Yadkin, or Pee Dee River, is a nonnavigable stream. *S. v. Glen,* 52 N. C., 321; *Cornelius v. Glen,* 52 N. C., 512. Therefore, for the purpose of determining the riparian rights of the plaintiff it must be deemed that he owns to the center of the stream. Where a grant calls for a corner in the bank of a stream and then with its meanders to another corner, by implication of law the grant extends to the middle of the river and confers ownership for certain purposes as appurtenant to the land granted, although the land not having been paid for is still the property of the State. *Cornelius v. Glen, supra.* A grant of land, bounded in terms by a river or creek not navigable, carries the land to the grantee *usque ad filum aquae,* to the middle or thread of the stream. *Williams v. Buchanan,* 23 N. C., 535. *Parker v. Griswold,* 17 Conn., 288, 42 A. D., 739, is to the same effect. So, in determining the plaintiff's rights, he is to be deemed a riparian owner, possessing the rights of such in the waters of Yadkin or Pee Dee River to the center thereof.

A lower riparian owner has the right to use the water of a stream as it comes upon his land in its natural state for any purpose to which it may be applied without material injury to the just rights of others. This right is inseparably annexed to the soil itself. *Durham v. Cotton Mills,* 141 N. C., 615; *R. R. v. Light & Power Co.,* 169 N. C., 481; *Smith v. Morganton,* 187 N. C., 803.

In some of the cases defining the rights of a riparian owner, the terms "like use," "like situation," "like owners," and "like," are used. These terms, of course, mean that the use of one farmer shall be judged by the use of another farmer, one manufacturer by the customs and use of another manufacturer. The use by any particular person must be the same as the neighboring proprietor in like circumstances. We cannot compare the uses of a farmer with those of a power producer. To construe the term "other like owners" strictly, as the term is seemingly but not actually used in some of the decisions, would virtually nullify the

law of riparian ownership and riparian rights.    To so construe it would mean that a stream not theretofore used for water power purposes could never be so used, because the person who first undertook to avail himself of the water power capabilities of a stream would find that he was not making use thereof as other like owners.    Such construction, when applied to a stream used largely for water power purposes, would likewise for all practical purposes destroy any use of the stream by farmers or others similarly situated.

Applying the law that a riparian landowner is entitled to have the waters of a stream to continue to flow by his lands in its usual channel, and in its normal quantity, it has become a well established principle of law in this and most of the other jurisdictions that any substantial diversion of waters or the pollution of waters of a stream gives rise to a cause of action in behalf of all riparian owners affected thereby.    In some of the western states where the land is arid and irrigation is essential the rule against the diversion of the waters of a stream has been modified.    Neither a diversion or a pollution of the waters of Yadkin River is alleged and the cited authorities are not pertinent in so far as they deal with these particular phases of riparian ownership.

The right of a riparian owner to the use of water flowing by his premises in a natural stream and as an incident to his ownership of the soil and to have it transmitted to him without sensible alteration in quality or unreasonable diminution in quantity, has been recognized and dealt with by the courts for time immemorial.    While it has never been said that one who possesses lands bordering upon a nonnavigable stream actually owns the running water, it has always been recognized that he has the right to a reasonable use of it as it passes his land.    And so, the doctrine of reasonable use has become fully developed and is recognized by this and all other jurisdictions.

The right of a riparian owner to make a reasonable use of the waters, so long as he does not divert or pollute it, is recognized by the plaintiff and many of the authorities cited in his brief are made to turn upon the question of reasonable use.

The "reasonable use" doctrine was recognized in *Pugh v. Wheeler,* 19 N. C., 50, in which *Ruffin, C. J.,* referring to the use of water of a stream to propel machinery, says: "But the owners of the land may have those uses of it; and as they are beneficial uses—beneficial, not only as sources of private gain, but therein also of public utility—it is reasonable, and ought therefore to be lawful, that the owners of the land should, as such, be entitled to the advantage of all those profitable uses of the water, which do not affect it as the aliment provided by nature to nourish animal life.    We conceive, therefore, that it is the clear doctrine of the common law, that all the owners of land through which a

stream, not navigable, runs, may apply it to the purposes of profit."
See *Smith v. Morganton,* 187 N. C., 803.

The right of a riparian proprietor to the natural flow of a stream
running through or along his land in its accustomed channel undimin-
ished in quantity and unimpaired in quality, is qualified by the right of
other riparian owners to make a reasonable use of such water as it passes
through or along their lands. In determining the rights of a lower
riparian owner, the question is whether the upper riparian proprietor is
engaged in a reasonable exercise of his right to use the stream as it flows
by or through his land, whether with or without retaining the water for
a time, or obstructing temporarily the accustomed flow. Every riparian
owner has a property right to the reasonable use of running water for
manufacturing purposes as well as for domestic and agricultural pur-
poses conformable to the uses and needs of the community, qualified only
by the requirement that it must be enjoyed with reference to the similar
rights of other riparian owners. A lower riparian owner has the right
only to insist that the waters shall not be unreasonably withheld or let
down by the owner above or withheld for an unreasonable length of time.
The upper riparian owner has no right by virtue of his position unrea-
sonably to interfere with the natural flow of the stream so as to give the
riparian proprietors below a great deal more than the usual quantity of
water during a part of the year, or at stated periods, and little or none
during the remainder of the year or during intervals of unreasonable
length. The statement that riparian proprietors are entitled to the
natural flow of the water of the stream without diminution or obstruc-
tion and that no proprietor can diminish the quantity of water, which
will otherwise descend to the proprietor below, are statements that are
rather broader than they should be to accurately represent the law. A
better statement is one which includes the element of reasonable use by
each of the proprietors, although it has been said that it is impossible
to lay down a general rule in all cases. The rule that the upper pro-
prietor has no right to use the water to the prejudice of the proprietor
below him, or that he cannot lawfully diminish the quantity is too broad,
for it would give the lower proprietor superior advantages over the
upper and in many cases give him in effect a monopoly of the stream.

A riparian proprietor has a right to make all the use he can of the
stream so long as he does not pollute it or divert it from its natural
channel and abstract so much as to prevent other people from having
equal enjoyment with himself, or does not use the same in such an
unreasonable manner as to materially damage or destroy the rights of
other riparian owners. The rights of riparian owners in a running
stream above and below are equal; each has a right to the reasonable
use and enjoyment of the water, and each has a right to the natural flow

of the stream subject to such disturbance and consequent inconvenience and annoyance as may result to him from a reasonable use of the waters by others. There may be a diminution in quantity or a retardation or acceleration of the natural flow indispensable for the general valuable use of the water perfectly consistent with the existence of the common right and this may be done so long as the retardation and acceleration is reasonably necessary in the lawful and beneficial use of the stream. The diminution, retardation or acceleration not positively and sensibly injurious by diminishing the value of the common right is an implied easement in the right of using the stream. The right to use necessarily implies a right to exercise a degree of control over the water and to some extent to diminish its volume. And the water may be detained long enough to accumulate a sufficient head for manufacturing purposes before it is let down to the next user. However, the person detaining water must act in a reasonable manner and not let it off in unreasonable quantities.

What constitutes a reasonable use is a question of fact having regard to the subject matter and the use; the occasion and manner of its application; its object and extent and necessity; the nature and size of the stream; the kind of business to which it is subservient; the importance and necessity of the use claimed by one party and the extent of the injury caused by it to the other.

The mere erection of a dam and the use of the water in driving wheels or providing power must necessarily derange its steady, constant and natural flow and substitute a different manner as to the time and mode of holding it up and letting it down, but the water can be retained for the purpose of the upper mill if it is not diverted from the stream and the storing of water in a pond or reservoir for power purposes is not actionable if it is retained no longer than is reasonably necessary. The upper proprietor may hold back the water a reasonable time to raise a pond or reservoir, although the effect is to deprive the lower owner of the use of the water to a certain extent. He may hold the water back and let it down in such manner as is necessary for the use of his manufacturing enterprises if the enterprise is adapted to the character of the stream and the use is reasonable and the lower proprietor will not be of automobiles. One of plaintiff's witnesses testified in the trial that of the water.

The statements that a riparian owner "has no right to use the water to the prejudice of the proprietor below him" and that he cannot "diminish the quantity which would descend to the proprietor below" and that "he must so use the water as not materially to affect the application of the water below, or materially to diminish its quantity," are used in cases in which the diversion or pollution of water is being discussed.

In the cases involving the right to the profitable use of the waters of a stream it seems to be almost universally held that such interruption in the flow of the stream as is necessary and unavoidable in the reasonable and proper use of the mill privilege above cannot be the subject of an action. So it is said in *Dumont v. Kellogg,* 18 A. R., 102: "It is, therefore, not a diminution in the quantity of the water alone, or an alteration in its flow, or either or both of these circumstances combined with injury, that will give a right of action, if in view of all the circumstances and having regard to equality of right in others, that which has been done and which causes the injury is not unreasonable. In other words, the injury that is incidental to a reasonable enjoyment of the common right can demand no redress."

For cases dealing with the doctrine of reasonable use and the principles herein enounced see *Pugh v. Wheeler,* 19 N. C., 50; *McLaughlin v. Mfg. Co.,* 103 N. C., 100; *Adams v. R. R.,* 110 N. C., 326; *Durham v. Cotton Mills,* 141 N. C., 615; *Rouse v. Kinston,* 188 N. C., 1; *Harris v. R. R.,* 153 N. C., 542; *Mizell v. McGowan,* 129 N. C., 93, reported in 85 A. S. R., 705; *Barcliff v. R. R.,* 168 N. C., 268; *Dumont v. Kellogg,* 18 A. R., 102; *Salliotte v. Bridge Co.,* 65 L. R. A., 620; *Meyer v. Richmond,* 43 L. Ed., 374; *Gehlen Bros. v. Knorr,* 36 L. R. A., 697; *Stratton v. Mt. Hermon School,* 216 Mass., 83; 67 C. J., 700.

As the defendant committed no wrong against the plaintiff in respect to his riparian rights so long as the defendant used the waters of Yadkin River in a lawful manner, the burden rests upon the plaintiff to show an unlawful, wrongful or unreasonable use thereof to his damage and hurt. Ordinarily, this presents a question of fact if there is any evidence to sustain the allegation. When, however, there is no evidence tending to show an unreasonable use it is a question for the court.

Viewing all of the evidence in the light most favorable to the plaintiff, we are of the opinion that plaintiff has failed to offer any evidence tending to show that the defendant is making an unreasonable use of the waters of Yadkin River to the hurt and damage of plaintiff's riparian rights. While the plaintiff offered evidence tending to show that defendant's floodgates were closed at night, resulting in a substantial decrease in the water in the channel of Yadkin River, and that in the morning the floodgates were open for the purpose of operation, resulting in an accelerated flow of the water until the stream was at normal, there is no evidence that water was turned into the stream in excessive amounts and the detention or retardation thereof only between operating hours could not be held for an unreasonable use.

The plaintiff likewise offered evidence tending to show that at the present time his land overflows more frequently during periods of freshet or flood, and that when the high water begins to recede it does so much

more rapidly than heretofore, preventing the settlement of enriching silt on his land and washing away and eroding the top soil of his property, thereby destroying the value thereof. We are, however, unable to find any evidence in the record which we feel tends to show that such condition grows out of, or is caused by, the use of the waters of Yadkin River by the defendant.

We are of the opinion, therefore, that the judgment of nonsuit as to plaintiff's cause of action based upon allegations of damage to his riparian rights was properly allowed.

But this case presents for consideration another alleged cause of action, that is, the plaintiff alleges that by reason of the peculiar location of his lands at the confluence of Rocky River and Yadkin River, connected with the manner of operation of defendant's plant, the defendant has in effect taken his property in part at least, without just compensation. In respect to this there is evidence tending to show that when the defendant ceases operation at the end of the day it closes its floodgates; that this results in a diminution of the water in the channel of Yadkin River below defendant's dam; that the diminution of the water in the channel of Yadkin River causes the water in Rocky River to likewise diminish in quantity; that when the defendant begins operation in the morning and opens its floodgates, at first and until the channel of the Yadkin River reaches its normal stage, the flow of the water is accelerated and proceeds down the channel of Yadkin River in a bank at times several feet high; that when this bank of water reaches the point of confluence of Yadkin River and Rocky River, by reason of its quantity and accelerated speed, it strikes the bank which forms a part of the property of the plaintiff and flows back up the channel of Rocky River instead of following its usual channel, and that when the water of Yadkin River reaches its normal stage the water in Rocky River flows back down the channel of that river. The plaintiff has offered evidence likewise tending to show that this unusual movement of the water in the early portion of the weekdays is wearing away and gradually eroding the river bank of his property.

Whether this results in any considerable damage to the plaintiff's property is not for us to determine. The evidence tends to show that in this respect, to some extent at least, by reason of the peculiar location of the plaintiff's land not common to other lower riparian owners the defendant is taking or appropriating the property of the plaintiff without compensation. If these facts are established to the satisfaction of the jury the defendant is indebted to the plaintiff for the reasonable value of the land taken, or the damage so done, without regard to the reasonableness of the use it is making of the waters of Yadkin River in the operation of its plant. It cannot take the property of the plaintiff

without just compensation, even though it is a result of a reasonable use of its own property. To this extent the plaintiff is entitled to a new trial.

We conclude, therefore, that the plaintiff is entitled to a new trial to the end only that appropriate issues may be submitted to the jury to determine the truth of the plaintiff's evidence in respect to the damage to the banks of his land and the loss, if any, he has sustained by reason thereof.

New trial.