CITY OF WINSTON-SALEM v. E. V. FERRELL, JR., J. C. SMITH AND WIFE, SUSIE S. SMITH, AND CLYDE G. BARBER, TRUSTEE FOR FIRST UNION NATIONAL BANK, GENE T. KOCH (JEANNE T. [KOCH]), TRUSTEE FOR FIRST UNION NATIONAL BANK, AND WILLIAM A. VOGLE, TRUSTEE FOR FIRST UNION NATIONAL BANK v. J. D. CAVE CONSTRUCTION COMPANY

No. 8521SC132

(Filed 4 February 1986)

1. **Appeal and Error § 6.2— inverse condemnation—interlocutory—immediately appealable**

   An appeal in an inverse condemnation action was interlocutory in that the issue of damages was unresolved, but the determination of liability was immediately appealable and the court's order in finding that the City had inversely condemned portions of the defendants' land clearly affected the City's and contractor's substantial rights in that the contractor was joined by the City as a third party defendant under N.C.G.S. 1A-1, Rule 14, which an-

ticipates the disposition in one trial of cases involving multiple parties and provides the third party defendant the opportunity to participate fully in the determination of the third party plaintiff's liability. N.C.G.S. 1-277, N.C.G.S. 7A-27(d).

**2. Eminent Domain § 13.3— inverse ·condemnation—counterclaim to condemnation action—properly before court**

An inverse condemnation claim was properly before the court where it was asserted as a counterclaim to the City's condemnation action. N.C.G.S. 40A-51.

**3. Eminent Domain § 13.4— inverse condemnation—roadway outside sewer construction easement—evidence sufficient**

In a condemnation action for sewer outfall construction easements in which defendants counterclaimed for inverse condemnation of a roadway and staging area outside the easements, the trial court's order finding that the roadway had been inversely condemned was affirmed where the court could have found from the evidence that the contractor's use of the roadway was essential to provide access to the construction site, that such use necessarily flowed from the construction of the improvement in keeping with the design of the condemnor, that it resulted in an appropriation outside the easements, and that the use was not for a momentary period.

**4. Eminent Domain § 13.4— inverse condemnation—staging area outside sewer construction easement—evidence not sufficient**

In a condemnation action for sewer outfall construction easements in which defendants counterclaimed for inverse condemnation of a roadway and staging area outside the easements, the trial court's order finding that the staging area had been inversely condemned was reversed where the evidence did not show that the use of the staging area was necessary to complete the project and showed at most that certain employees of the City were aware that the contractor was using the area and that it was outside the easements.

**5. Eminent Domain § 13— inverse condemnation—award of attorney fees—no error**

The trial court properly awarded defendants attorney fees in an inverse condemnation action because the City did not include the property in its Declaration of Taking. N.C.G.S. 40A-8, N.C.G.S. 40A-51(a).

APPEAL by plaintiff, City of Winston-Salem, and third-party defendant, J. D. Cave Construction Co., from *Freeman, Judge.* Order entered 24 October 1984 in Superior Court, FORSYTH County. Heard in the Court of Appeals 19 September 1985.

In August 1982 plaintiff, the City of Winston-Salem (the City), contracted with third-party defendant J. D. Cave Construction Company (the contractor) for the construction of improvements to the City's sewer system. The City provided plans to the contractor requiring that portions of the "Stratford Road Outfall" be con-

structed across the land of defendants, E. V. Ferrell, Jr. and J. C. Smith. The plans identified permanent and construction easements to be acquired by the City.

In September 1982, prior to the filing of a condemnation action by the City, the City's agents, acting within the scope of their employment, instructed the contractor to begin construction of the Stratford Road Outfall. The contractor entered upon defendants' land, graded and gravelled a roadway outside the areas identified as areas to be acquired by the City, and began to haul pipe into the construction site. The contractor used a second area outside the identified easements to store pipes and equipment. The parties refer to this as the "staging area." In each instance the contractor's employees were aware that they were using land outside the City's designated easements.

The contractor neither requested nor received permission from the City regarding its clearing and use of the roadway or its use of the staging area. However, Kermit Parrish, a construction inspector supervisor for the City, was aware of the contractor's activities outside the easements the City intended to acquire. Parrish testified that part of his job was to ensure that the contractor stayed within the City's easements. In addition, each day of construction either he or someone assigned by him used the roadway to gain access to the construction site. Parrish testified that City survey crews, on the site periodically, also used the roadway.

On or about 20 October 1982, defendant Smith became aware of the activities taking place on his land. He discussed the contractor's use of the roadway with Delmore Hester, the City's senior real estate agent in charge of acquisition. Hester assured him that the contractor would immediately discontinue use of the roadway and restore the area to its original condition. Hester sent Smith the following letter regarding their conversation:

> As I discussed with you in our telephone conversation, the City will hold the contractor (J. D. Cave Construction Company) responsible to regrade, lime, fertilize and sow with fescue all area outside of the right away [sic] which was disturbed by hauling pipe to the Stratford Road Sewer Project.
>
> We apologize for any inconvenience this may have caused.

Hester spoke with the contractor's president, J. D. Cave (Cave), regarding the roadway, and sent him a copy of the above letter. Cave, however, understood Hester to say that his company could continue to use the roadway as long as the property was restored to its original condition upon completion of the project. The contractor continued to use the roadway. It was not reseeded until June 1983.

On 3 February 1983 the City filed a Complaint and Declaration of Taking describing permanent and construction easements across defendants' land. The roadway and the staging area were not included in the description. Defendants counterclaimed, alleging in part that the use of areas outside those described in the complaint constituted inverse condemnation. The City subsequently filed a third-party complaint against the contractor seeking indemnification for any liability the City incurs arising out of the contractor's "unauthorized" use of land outside the easements described in the complaint.

Pursuant to N.C. Gen. Stat. 40A-47, the court entered an order finding that the City inversely condemned portions of defendants' land outside those described in the complaint — specifically, the roadway and the staging area. In addition it awarded defendants costs, disbursements and attorney fees pursuant to N.C. Gen. Stat. 40A-8(c).

The City and the contractor appeal.

*Ronald G. Seeber and Ralph D. Karpinos for plaintiff appellant.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by F. Joseph Treacy, Jr. and Richard J. Keshian, for defendant appellees.*

*Roy G. Hall, Jr.; Liner & Bynum, by David V. Liner; and Caudle & Spears, by Lloyd C. Caudle, for third-party defendant cross appellant.*

WHICHARD, Judge.

I.

[1] We note that the order is interlocutory in two respects:

First, the issue of damages remains unresolved. The determination of liability nevertheless is immediately appealable. *Highway Commission v. Nuckles*, 271 N.C. 1, 13-14, 155 S.E. 2d 772, 783 (1967).

Second, the court failed to rule on the City's third-party complaint against the contractor. As the judgment adjudicates "fewer than all the claims or the rights and liabilities of fewer than all the parties," and fails to state that the judgment is final or that there is no just reason for delay in accordance with N.C. Gen. Stat. 1A-1, Rule 54(b), the judgment is interlocutory and can be reviewed only if it affects a substantial right pursuant to N.C. Gen. Stat. 1-277 or N.C. Gen. Stat. 7A-27(d). *Oestreicher v. Stores*, 290 N.C. 118, 121-24, 225 S.E. 2d 797, 800-02 (1976).

The order clearly affects the City's substantial rights. *Nuckles, supra*. The contractor was joined by the City as a third-party defendant pursuant to N.C. Gen. Stat. 1A-1, Rule 14. "This rule anticipates the disposition in one trial of cases involving multiple parties." *Cody v. Dept. of Transportation*, 60 N.C. App. 724, 726, 300 S.E. 2d 25, 28 (1983). Rule 14 provides that "the third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim."

When a third-party defendant has an opportunity to participate fully in the determination of third-party plaintiff's liability, it is bound by a judgment in favor of the original plaintiff (here, the defendants by counterclaim). *See* W. Shuford, *North Carolina Civil Practice and Procedure*, Sec. 14-12 (2d ed. 1981); 3 *Moore's Federal Practice* Par. 14.13. Thus, the order finding the City liable affects the contractor's substantial rights. We therefore consider the appeals of both the City and the contractor.

## II.

The issue is whether the trial court, sitting as the trier of fact without a jury, could find and conclude from the evidence presented that the City had, by inverse condemnation, taken a temporary easement in the roadway and "staging area" which were used by its contractor but were outside the easements formally taken. We hold that it could so find as to the roadway but not as to the staging area.

## III.

[2]   Defendants' claim is in

"inverse condemnation," a term often used to designate "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of power of eminent domain has been attempted by the taking agency."

*Charlotte v. Spratt*, 263 N.C. 656, 662-63, 140 S.E. 2d 341, 346 (1965), *quoting from Jacksonville v. Schumann*, 167 So. 2d 95, 98 (Fla. Dist. Ct. App. 1964). " 'Inverse condemnation is a device which forces a governmental body to exercise its power of condemnation, even though it may have no desire to do so.' " *Hoyle v. City of Charlotte*, 276 N.C. 292, 302, 172 S.E. 2d 1, 8 (1970), *quoting from* Bohannon, Airport Easements, 54 Va. L. Rev. 355, 373 (1968).

"The legal doctrine indicated by the term, 'inverse condemnation,' is well established in this jurisdiction." *Spratt*, 263 N.C. at 663, 140 S.E. 2d at 346.

Where private property is *taken* for a public purpose by a municipality or other agency having the power of eminent domain under circumstances such that no procedure provided by statute affords an applicable or adequate remedy, the owner, in the exercise of his constitutional rights, may maintain *an action* to obtain just compensation therefor.

*Id.*

An inverse condemnation remedy is now provided in this jurisdiction by statute. Where property has been taken and no complaint containing a declaration of taking has been filed, the owner "may initiate an action to seek compensation for the taking." N.C. Gen. Stat. 40A-51.

The owners here did not "initiate an action" but instead asserted in the City's condemnation action a counterclaim alleging that property not included therein had in fact been taken. Our Supreme Court has indicated, however, that "principles of judicial economy dictate that the owners of the taken land may allege a further taking by inverse condemnation in the ongoing pro-

ceeding." *Dept. of Transportation v. Bragg*, 308 N.C. 367, 371 n. 1, 302 S.E. 2d 227, 230 n. 1 (1983). Defendants' assertion of a counterclaim in this condemnation action by the City thus properly placed the inverse condemnation issue before the court.

### IV.

" 'Taking' under the power of eminent domain may be defined generally as entering upon private property for more than a momentary period and, under the warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof."

*Ledford v. Highway Comm.*, 279 N.C. 188, 190-91, 181 S.E. 2d 466, 468 (1971), *quoting from* 26 Am. Jur. 2d, *Eminent Domain* Sec. 157 (1966), adopted in *Penn v. Coastal Corporation*, 231 N.C. 481, 484, 57 S.E. 2d 817, 819 (1950).

### V.

Under the terms of its contract with the City, the contractor is an independent contractor, *i.e.*,

[o]ne who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to details of the work . . . .

*Drake v. Asheville*, 194 N.C. 6, 9, 138 S.E. 343, 344 (1927), *quoting Beal v. Fibre Co.*, 154 N.C. 147, 149-50, 69 S.E. 834, 835 (1910). The contractor was to furnish all necessary materials, labor and equipment. The City's reserved right to supervise the contractor's performance in order to assure compliance with project specifications, to change the plans for the project, and to remove any "incompetent or disorderly" employee does not alter the contractor's status as an independent contractor. *Denny v. Burlington*, 155 N.C. 33, 70 S.E. 1085 (1911); *see generally* 18 McQuillan, *Municipal Corporations*, Sec. 53.76a (3d ed. rev. 1977).

As a general rule, a municipality is not liable for the torts of its independent contractors. *Drake*, 194 N.C. at 10, 138 S.E. at

345. "The law with respect to the liability of the contractors of a municipality for wrongful acts generally is the same as that applying to contractors of a private business. A contractor meeting the requirements of an independent contractor is, subject to exceptions . . ., solely responsible for his own wrongful acts." *Horne v. City of Charlotte*, 41 N.C. App. 491, 493, 255 S.E. 2d 290, 292 (1979).

Where, however, a contractor "is employed to do an act allegedly unlawful in itself, such as committing a trespass, the municipality is solely liable for the resulting damages." *Horne*, 41 N.C. App. at 493-94, 255 S.E. 2d at 292. *See also*, as generally instructive, *Sales Co. v. Board of Transportation*, 292 N.C. 437, 441, 233 S.E. 2d 569, 572 (1977); *Highway Commission v. Reynolds Co.*, 272 N.C. 618, 624, 159 S.E. 2d 198, 203 (1968); *Moore v. Clark*, 235 N.C. 364, 367-68, 70 S.E. 2d 182, 185 (1952); *Cody v. Dept. of Transportation*, 45 N.C. App. 471, 473, 263 S.E. 2d 334, 335 (1980). Similarly, a municipality is solely liable for the damages that inevitably or necessarily flow from the construction of an improvement in keeping with the design of the condemnor. 4A *Nichols on Eminent Domain* Sec. 14.16[2] at 14-380, *quoting Board of Comrs. of Little Rock v. Sterling*, 597 S.W. 2d 850, 852 (Ark. Ct. App. 1980); *see also Julius Keller Const. Co. v. Herkless*, 59 Ind. App. 472, 484, 109 N.E. 797, 802 (1915) (if by reason of a defective plan injury to others results as a necessary consequence, the fact that the performance of the work is committed to an independent contractor will not shield the city from liability). Damages to land outside the easements which inevitably or necessarily flow from the construction of the outfall result in an appropriation of land for public use. Such damages are embraced within just compensation to which defendant landowners are entitled. *Id.*

Further, contract provisions which require that work "be accomplished upon public property or upon private property for which the [City] holds a permanent easement and/or a construction easement" and the contractor "confine its operations within the specified right of way or . . . present evidence to the [City] that it has permission of any landowner whose property it may encroach upon," do not alter the city's liability for such damages. "If a municipality would otherwise be liable for the acts of an independent contractor, it cannot evade liability to third persons by stipulating in the contract that the contractor should protect the

public and that he should be liable for damages resulting from his wrongful acts." McQuillin, *supra*, Sec. 53.77 at 435-36.

## VI.

The issues were determined by the court sitting without a jury. *See* N.C. Gen. Stat. 40A-47. "When . . . issues are tried before the court sitting without a jury, the trial court sits as both judge and jury. Findings of fact so made, if supported by competent evidence, are as conclusive on appeal as a jury verdict." *Ayden Tractors v. Gaskins*, 61 N.C. App. 654, 661, 301 S.E. 2d 523, 528 (1983); *see also Reynolds Co. v. Highway Commission*, 271 N.C. 40, 50, 155 S.E. 2d 473, 481 (1967). The court determines the weight and credibility of conflicting evidence and when different inferences may be drawn from the evidence, the ultimate decision is for the court. *Reynolds*, 271 N.C. at 50, 155 S.E. 2d at 481.

## VII.

[3] Considering the evidence here in light of the foregoing legal principles, we find the following regarding the roadway over defendants' property:

The contractor's president, Cave, testified on deposition as follows:

The contractor had started clearing a right-of-way to the sewer outfall construction site. The City told Cave there was "some problem" with that right-of-way, so the contractor "moved off." A city engineer then told him he could cross the property of defendants. He was told that the City had acquired the right-of-way over defendants' property and to "go ahead . . . it's no problem."

The city engineer was present the day the contractor started construction across defendants' property. The engineer did not tell the contractor not to proceed or that there was any problem with proceeding across defendants' property. There was a city inspector present every day that the contractor worked on defendants' property, but the contractor was never told not to use the roadway. Based on a conversation with Delmore Hester, the city's senior real estate agent, and on Hester's letter to defendant Smith, *supra*, Cave thought his company had permission from the City to use defendants' property. He understood that use of the

roadway was "all right as long as it was put back in the manner in which it was found."

When the first load of pipe came in, the contractor "couldn't get it in on the other end so it had to come down the right-of-way." Cave stated: "There's no way to get in there with equipment and cut that dirt out. So we had to pick an alternate route. So that's the way we came. We came down through the right-of-way itself." Cave further stated: "[W]e had to use that road coming down to get our stone in and pipping [sic] in." He finally stated that his company had to clear at least a path to get a truck through.

The testimony of defendant Smith at trial tended to corroborate Cave's deposition testimony. In particular, Smith testified that Cave told him he had graded the road into defendants' property and "that that was the only way he had to haul pipe in."

The trial court, as the trier of fact, could find from the foregoing evidence that the contractor's use of the roadway over defendants' property was essential to provide access to the City's sewer outfall construction site, that such use thus necessarily flowed from the construction of the improvement in keeping with the design of the condemnor, and that it thus resulted in an appropriation of land outside the easements. 4A Nichols, *supra.* The evidence clearly establishes that the use was not for "a momentary period," *Ledford, supra,* but extended over a period of several months. We thus hold that the court could find and conclude that the City inversely condemned a temporary easement in the roadway over defendants' property. The order, insofar as it relates to the roadway, is therefore affirmed.

VIII.

[4]   Considering the evidence in light of the foregoing legal principles, we find the following regarding the staging area on defendants' property:

Cave testified on deposition that he used the area "as a staging area for equipment and supplies." The area was outside the construction easement and was probably approximately "100 by 200" feet. The contractor used the area the entire time it was in the process of constructing the sewer line across defendants' property. While the city never gave the contractor permission to

work outside its designated easements, City inspectors on the job had an opportunity to observe the contractor's use of the area and no one from the City ever told Cave to remove his company's materials.

A construction inspector supervisor testified at trial that he observed the contractor's use of the staging area but did not tell Cave to move his company's supplies and equipment. He further testified that the City did not store any materials on the staging area and that he did not tell Cave his company could use the area.

Unlike the evidence regarding the contractor's use of the roadway, the evidence regarding its use of the staging area does not show that such use was necessary to complete the project. It shows at most that certain employees of the City were aware that the contractor was using the area and that the area was outside the easements. Thus, the general rule that a municipality is not liable for the torts of its independent contractors applies to the staging area. *Drake, supra.* We hold that the court could not find and conclude, on this record, that the City inversely condemned a temporary easement in the staging area on defendants' property. The order, insofar as it relates to this area, is therefore reversed.

## IX.

[5] The court awarded defendants attorney fees in accordance with N.C. Gen. Stat. 40A-8. N.C. Gen. Stat. 40A-8(c) provides:

> If an action is brought against a condemnor under the provisions of G.S. 40A-20 [dealing with the filing of a petition praying for the appointment of commissioners of appraisal] or 40A-51 seeking compensation for the taking of any interest in property by the condemnor and judgment is for the owner the court shall award to the owner as a part of the judgment after appropriate findings of fact a sum that, in the opinion of the court . . . will reimburse the owner as set out in subsection (b) [his reasonable costs; disbursements; expenses (including reasonable attorney, appraisal, and engineering fees); . . . ].

N.C. Gen. Stat. 40A-51(a) provides, in part, "[i]f property has been taken by an act or omission of a condemnor listed in G.S. 40A-3(b) or (c) and *no complaint containing a declaration of taking has been*

*filed* the owner of the property, may initiate an action to seek compensation for the taking." (Emphasis supplied.) While the City filed a Declaration of Taking, it did not include the property here held to have been inversely condemned. We thus find the court's assessment of costs proper.

## X.

Insofar as the order relates to the roadway, it is affirmed; insofar as it relates to the staging area, it is reversed. The cause is remanded for an assessment of damages for the taking of the roadway, a determination regarding the third-party defendant's liability, and an award of costs pursuant to N.C. Gen. Stat. 40A-8(c).

Affirmed in part, reversed in part, and remanded.

Judges WELLS and PHILLIPS concur.