L&S WATER POWER, INC. v. PIEDMONT TRIAD REG'L WATER AUTH.

[211 N.C. App. 148 (2011)]

L&S WATER POWER, INC., BROOKS ENERGY, L.L.C., DEEP RIVER HYDRO, INC., HYDRODYNE INDUSTRIES LLC, WILLIAM DEAN BROOKS, AND HOWARD BRUCE COX, PLAINTIFFS v. PIEDMONT TRIAD REGIONAL WATER AUTHORITY, DEFENDANT

No. COA10-1063

(Filed 19 April 2011)

## 1. Appeal and Error— interlocutory orders and appeals— substantial right

Although the trial court's order was interlocutory since it left the amount of compensation to be resolved, orders under N.C.G.S. § 40A-47 are immediately appealable as affecting a substantial right.

## 2. Waters and Adjoining Lands— riparian rights—eminent domain—just compensation

The trial court did not err by determining that defendant had taken plaintiffs' riparian rights and that plaintiffs were entitled to compensation from defendant for the taking. Although the impoundment statutes and NC Environmental Management Commission (EMC) certificate authorized defendant to exercise its power of eminent domain by diverting the water flow in a river in order to develop a public water supply, defendant was obligated to pay just compensation. Further, plaintiffs introduced the necessary evidence to determine the rate of water flow.

## 3. Administrative Law— exhaustion of administrative remedies—not required—inverse condemnation compensation

The trial court did not err by concluding that plaintiffs had no administrative remedies to exhaust before bringing their inverse condemnation claim against defendant. Plaintiffs were not challenging the EMC certificate or defendants' right to exercise eminent domain, but were asking only to be compensated as a result of the diverted waters.

## 4. Damages and Remedies— calculation of compensation— capitalization of income approach—partial taking

The trial court did not err by concluding that the capitalization of income approach used by the trial court was a reasonable method to calculate plaintiffs'compensation for a partial taking.

[211 N.C. App. 148 (2011)]

Appeal by defendant from order entered 26 October 2009 by Judge Calvin E. Murphy in Guilford County Superior Court; and Findings of Fact and Conclusions of Law on Defendant's Motion for Relief from Order and Certification of Action by Trial Court on Remand entered 10 May 2010 by Judge Clarence E. Horton, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 10 February 2011.

*Boydoh Law Group, by J. Scott Hale, for plaintiff appellees.*

*Roberson Haworth & Reese, P.L.L.C., by Robert A. Brinson and Christopher C. Finan; and Hunton & Williams, LLP, by Charles D. Case, for defendant appellant.*

*North Carolina League of Municipalities General Counsel Kimberly S. Hibbard, Senior Assistant General Counsel Gregory F. Schwitzgebel, III, and City of Raleigh Associate City Attorney Daniel F. McLawhorn, Amicus Curiae.*

*Water and Sewer Authority of Cabarrus County, by Hartsell & Williams, P.A., by Fletcher L. Hartsell, Jr., and Christy E. Wilhelm, Amicus Curiae.*

McCULLOUGH, Judge.

Defendant Piedmont Triad Regional Water Authority ("defendant") appeals from an order of the Guilford County Superior Court which held that defendant had taken plaintiffs' riparian rights and that plaintiffs were entitled to compensation for defendant's taking. After careful review, we affirm the order of the trial court.

## I. Background

Defendant is a public water authority that is comprised of Randolph County and the municipalities of Greensboro, High Point, Jamestown, Archdale, and Randleman. Defendant was organized under N.C. Gen. Stat. § 162A-3.1 to develop a public water supply for the Piedmont Triad region of North Carolina to satisfy its projected water demand for the next 50 years or more. Plaintiffs L&S Water Power, Inc., Brooks Energy, L.L.C., Deep River Hydro, Inc., Hydrodyne Industries LLC and Howard Bruce Cox (collectively "plaintiffs") are downstream riparian owners who operate hydroelectric power plants on the Deep River.[1]

---

1. The Complaint was initially brought on behalf of seven hydroelectric power plants, two of which were non-operational. The trial court held that the plaintiffs own-

On 18 August 1988, defendant petitioned the North Carolina Environmental Management Commission ("EMC"), pursuant to N.C. Gen. Stat. §§ 162A-7 and 153A-285 (both repealed), to use the power of eminent domain to divert water from the Deep River basin to construct Randleman Lake. On 21 February 1992, the EMC issued a certificate (the "EMC certificate") authorizing defendant to acquire land by eminent domain and divert by inter-basin transfer up to 30.5 million gallons of water per day from the Deep River Basin to the Haw and Yadkin River Basins. In the EMC Certificate, the EMC found that the minimum average 7Q10 flow in the Deep River at the Randleman Lake impoundment is slightly less than 10 cubic feet per second.

In April of 2001, defendant received a 404 Permit from the Department of the Army authorizing it to construct the Randleman Dam. Defendant built the Randleman Dam and started filling the Randleman Lake in order to develop a public water supply ("the Randleman project").

On 29 May 2008, plaintiffs filed a complaint against defendant for inverse condemnation and asserted that defendants decreased the rate of water flow in the Deep River and sought compensation from defendant for the taking of their riparian rights. On 11 May 2009, defendant filed a Motion for Judicial Determination of Issues Other than Compensation pursuant to N.C. Gen. Stat. § 40A-47 (the "Motion"). The Motion was heard at the 28 July, 30 July, 23 September, and 24 September 2009 Sessions of Guilford County Superior Court.

On 26 October 2009, the trial court held that defendant had taken plaintiffs' riparian rights and that plaintiffs were entitled to compensation from defendant. Specifically, the trial court found that: (1) defendant used its power of eminent domain to build the Randleman project, in furtherance of developing a public water supply; (2) the Randleman project has and will continue to reduce the rate of water flow in the Deep River; (3) plaintiffs' ability to produce electricity has been negatively impacted by reduction of the natural stream flow of the Deep River. The trial court concluded that plaintiffs are entitled to be compensated for the loss of stream flow and that plaintiffs' riparian rights can be valued by the loss of electricity capable of being produced as a result of reduction of stream flow. Defendant filed notice of appeal on 23 November 2009.

ing non-operational plants could not recover from defendant. Those plaintiffs are not parties to this appeal.

## II. Issues

Defendant appeals the trial court's determination that it had taken plaintiffs' riparian rights. Defendant contends that the trial court erred by (1) applying the common law doctrine of riparian rights without considering the EMC certificate or the impoundment statutes codified in N.C. Gen. Stat. § 143-215.44 to -215.50 (2009) (the "impoundment statutes"); (2) concluding that plaintiffs had no administrative remedies to exhaust before bringing their claim for inverse condemnation; and (3) determining that plaintiffs' compensation should be calculated by valuing the loss of electricity capable of being produced by each plaintiff as a result of the reduction in natural stream flow.

## III. Appellate Review

[1] Because the trial court's order left the amount of compensation to be resolved, it is an interlocutory order. *See Concrete Machinery Co. v. City of Hickory*, 134 N.C. App. 91, 96-97, 517 S.E.2d 155, 158-59 (1999). Generally, there is no right to appeal from an interlocutory order. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). However, this Court has held that orders under N.C. Gen. Stat. § 40A-47 are immediately appealable as affecting a substantial right. *See, e.g., Piedmont Triad Reg'l Water Auth. v. Unger*, 154 N.C. App. 589, 591, 572 S.E.2d 832, 834 (2002) (holding that the court's determination under N.C. Gen. Stat. § 40A-47 affected a substantial right). Thus, defendant's appeal is properly before this Court.

## IV. Standard of Review

This matter came before the trial court as a result of defendant's motion under N.C. Gen. Stat. § 40A-47, which allows the court to determine all issues raised by the pleadings, other than the issue of compensation, including whether or not a taking has occurred. N.C. Gen. Stat. § 40A-47 (2009). This Court is bound by factual findings of the trial court, as long as the findings are supported by competent evidence. *City of Winston-Salem v. Ferrell*, 79 N.C. App. 103, 111, 338 S.E.2d 794, 799 (1986). We review the trial court's conclusions of law *de novo* on appeal. *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004).

## V. Taking of Plaintiffs' Riparian Rights

[2] Defendant appeals the trial court's conclusion of law that defendant had taken plaintiffs' riparian rights. Defendant claims that plain-

tiffs do not have a sufficiently defined interest in the rate of water flow in the Deep River and argues that the trial court improperly applied the common law doctrine of riparian rights without taking into account the EMC certificate or the impoundment statutes codified in N.C. Gen. Stat. §§ 143-215.44 to -215.50. We disagree and affirm the order of the trial court.

Defendant is a public authority that possesses the power of eminent domain. Eminent domain is "the power to divest right, title or interest from the owner of property and vest it in the possessor of the power against the will of the owner upon the payment of just compensation for the right, title or interest divested." N.C. Gen. Stat. § 40A-2(3) (2009). A condemnation or taking is the procedure used by the government for exercising its power of eminent domain. N.C. Gen. Stat. § 40A-2(1) (2009).

The Takings Clause of the Fifth Amendment of the United States Constitution provides that, when the government uses its power to take private property for a public use, the government must pay "just compensation" to the owner of the private property. U.S. Const. Amend. V. "The Fifth Amendment's guarantee . . . was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 4 L. Ed. 2d 1554, 1561 (1960).

The Fifth Amendment of the United States Constitution applies to the states through the Due Process clause of the Fourteenth Amendment. *Piedmont Triad Reg'l Water Auth.*, 154 N.C. App. at 592, 572 S.E.2d at 834. Although the North Carolina Constitution does not expressly prohibit the government from taking private property without just compensation, "the principle is so grounded in natural equity that it has never been denied to be a part of the law of North Carolina." *Department of Transp. v. M.M. Fowler, Inc.*, 361 N.C. 1, 4-5, 637 S.E.2d 885, 889 (2006) (internal quotation marks and citations omitted).

Riparian rights are vested property rights that arise out of ownership of land bounded or traversed by navigable water. *In re Protest of Mason*, 78 N.C. App. 16, 24-25, 337 S.E.2d 99, 104 (1985). Defendant argues that, pursuant to *Dunlap v. Light Co.*, 212 N.C. 814, 195 S.E. 43 (1938), plaintiffs do not have a property interest in the natural flow of water and that a reduction in water flow is not a compensable taking. In *Dunlap*, a private landowner sought compensation from the power company for its exercise of eminent domain over waters of the

Yadkin River. *Id.* at 815-16, 195 S.E. at 44. In that case, the power company closed the flood gates of the dam at night, decreasing the amount of water in the stream's channel, and opened those gates in the morning, which accelerated the flow of water. *Id.* at 821, 195 S.E. at 48. The Supreme Court upheld the judgment of nonsuit for plaintiff's cause of action for taking his riparian rights. *Id.* at 822, 195 S.E. at 48.

However, *Dunlap* does not stand for the proposition that a reduction of flow is not compensable. The Supreme Court affirmed the judgment of nonsuit because the plaintiff in *Dunlap* was unable to show that the defendant's actions caused a permanent disturbance of the natural water flow. *Id.* at 821, 195 S.E. at 48. Plaintiffs' cause of action in the present case is not analogous to *Dunlap*, as plaintiffs were able to present evidence at trial that defendant's diversion of water has reduced and will continue to reduce the natural rate of flow in the Deep River.

Defendant contends that the trial court failed to properly apply the reasonable use doctrine. Under North Carolina's "reasonable use" rule, a riparian owner is entitled to the natural flow of a stream running through or along his land, undiminished and unimpaired in quality, except as may be caused by the reasonable use of water by other riparian owners. *Pendergrast v. Aiken*, 293 N.C. 201, 216, 236 S.E.2d 787, 796 (1977); *see also Bruton v. Light Co.*, 217 N.C. 1, 9, 6 S.E.2d 822, 827 (1940) (holding that a riparian owner is entitled to make a reasonable use of water adjacent to his property as long as he does not injure the rights of downstream riparian owners). A landowner can only be held liable for interfering with the flow of surface waters, if the interference is " 'unreasonable and causes substantial damage.' " *Pendergrast*, 293 N.C. at 216, 236 S.E.2d at 796 (citation omitted). In *Board of Transportation v. Warehouse Corp.*, 300 N.C. 700, 268 S.E.2d 180 (1980), the trial court applied the reasonable use rule by instructing the jury to consider the damage from the diverted flood waters only if the State had "unreasonably interfered with the flow of surface waters." *Id.* at 705, 268 S.E.2d at 183. Our Supreme Court reversed and held that the reasonable use doctrine does not apply in condemnation proceedings, by explaining that:

> the doctrine of reasonable use adopted in *Pendergrast* defines the extent to which a private landowner may interfere with the flow of surface water on the property of another. . . .
>
> . . . Where the interference with surface waters is effected by [a government] entity, the principle of reasonable use articulated

in *Pendergrast* is superseded by the constitutional mandate that "[w]hen private property is taken for public use, just compensation must be paid." *Eller v. Board of Education*, 242 N.C. 584, 89 S.E.2d 144 (1955).

*Id.* at 705-06, 268 S.E.2d at 183-84; *see also State of N.C. v. Hudson*, 665 F. Supp. 428, 447 (E.D.N.C. 1987) ("A municipal diversion of water for public water supply is not a riparian use, and if the diversion causes injury to downstream riparian owners the injury may be redressed in a court of law.").

A. Impoundment Statutes and EMC Certificate

Defendant contends that the trial court incorrectly applied the common law doctrine of riparian rights by failing to take into account the EMC certificate or the impoundment statutes codified in N.C. Gen. Stat. § 143-215.44 to -215-50. We do not agree.

In 1971, the General Assembly enacted the impoundment statutes, which provide, in relevant part that "[a] person who lawfully impounds water for the purpose of withdrawal shall have a right of withdrawal of excess volume of water attributable to the impoundment." N.C. Gen. Stat. § 143-215.44(a). The statutes also provide that "[a] person operating a municipal, county, community or other local water distribution or supply system and having a right of withdrawal may assert that right when its withdrawal is for use in any such water system as well as in other circumstances." N.C. Gen. Stat. § 143-215.49. The EMC certificate authorized defendant to divert up to 30.5 million gallons of water per day from the Deep River basin to the Haw and Yadkin River basins.

Defendant claims that the impoundment statutes granted public authorities a "superior" right to withdraw excess water, such that the government is only obligated to compensate downstream riparian owners if its withdrawal of water exceeds the amount authorized in the EMC certificate. We cannot find any authority to support defendant's argument.

Clearly, the impoundment statutes and the EMC certificate authorized defendant to exercise its power of eminent domain by diverting the water flow in the Deep River in order to develop a public water supply. The exercise of eminent domain in itself is a superior right over any private landowner. However, just because defendant is authorized to exercise its powers of eminent domain, it does not follow that defendant is relieved of the constitutional mandate to compen-

sate those whose property is taken. Nothing in the impoundment statutes or the EMC certificate states that defendant is not obligated to pay just compensation.

Furthermore, the impoundment statutes only grant defendant the right to withdraw "an excess volume of water" which is defined as the "volume which may be withdrawn from an impoundment . . . *without foreseeably reducing the rate of flow of a watercourse below that which would obtain in that watercourse if the impoundment did not exist.*" N.C. Gen. Stat. § 143-215.44(c) (emphasis added). In the present case, the trial court specifically found that the "filling of Randleman Lake and operation of Randleman Dam and Lake have and will reduce the rate of water flow in the Deep River below that which would obtain in the Deep River if [the Randleman project] did not exist." Therefore, the trial court properly applied the common law doctrine of riparian rights to determine that defendant had taken plaintiffs' riparian rights and that plaintiffs were entitled to compensation from defendant for the taking.

B. Average Annual Flow

Defendant assigns error to the following factual finding:

31. The average annual flow of the Deep River prior to the construction of Randleman Dam . . . was 163 cubic feet per second at or about the location of the Randleman Dam. The average annual flow in the Deep River is not now and never has been the flow known as the 7Q10, which sets forth the lowest average flow rate for 7 consecutive days during a ten year period.

"Where the trial judge sits as the trier of fact, '[t]he court's findings of fact are conclusive on appeal if supported by competent evidence[.]' " *Gibson v. Faulkner*, 132 N.C. App. 728, 732-33, 515 S.E.2d 452, 455 (1999) (quoting *Gilbert Engineering Co. v. City of Asheville*, 74 N.C. App. 350, 364, 328 S.E.2d 849, 858, *disc. review denied*, 314 N.C. 329, 333 S.E.2d 485 (1985)). Even if there is evidence to the contrary, it is the ultimate decision of the court to determine the weight and credibility of conflicting evidence when different inferences may be drawn from the evidence. *Ferrell*, 79 N.C. App. at 111, 338 S.E.2d at 799. We conclude that the factual finding of the trial court is supported by competent evidence.

Defendant argues that the trial court erred by failing to use the 7Q10 to determine the average annual flow of the Deep River. The

7Q10 is the lowest average flow for seven consecutive days during a ten-year period. The 7Q10 for the Deep River is 10 cubic feet per second.

N.C. Gen. Stat. § 143-215.48(") provides that when determining the rate of flow of water that would exist in the absence of an impoundment at issue, that rate shall be deemed to be 7Q10, *"unless a party to the litigation introduces a calculation that more closely approximates the actual rate." Id.* (emphasis added). Plaintiffs introduced evidence at trial to support the factual finding that 163 cubic feet per second was a more accurate rate than the 7Q10. In addition to providing expert testimony about the average annual flow of the Deep River, plaintiffs submitted Environmental Impact Statements which calculated the average annual flow of the Deep River prior to construction of the Randleman Dam to be 163 cubic feet per second. We overrule this issue.

### VI. Exhaustion of Administrative Remedies

**[3]** Defendant also maintains as error the trial court's conclusion of law that plaintiffs had no administrative remedies to exhaust before bringing their inverse condemnation claim against defendant. Defendant contends that plaintiffs were required to contest the issuance of the EMC certificate or the 404 permit before bringing their claim for inverse condemnation. We do not agree.

The EMC certificate and 404 permit authorized defendant to exercise the power of eminent domain by diverting water from the Deep River basin and constructing the Randleman Dam. However, plaintiffs are not challenging defendant's right to exercise eminent domain or to construct the Randleman Dam, but are asking for compensation from defendant for reduction of water flow in the Deep River.

If the Legislature has created an effective administrative remedy, "that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Hentz v. Asheville City Bd. of Educ.*, 189 N.C. App. 520, 522, 658 S.E.2d 520, 522 (2008). When a plaintiff has failed to exhaust his administrative remedies, the action shall be dismissed for lack of subject matter jurisdiction. *Flowers v. Blackbeard Sailing Club*, 115 N.C. App. 349, 353, 444 S.E.2d 636, 639 (1994).

A property owner's remedy for the government's failure to compensate him for the taking of his property is to bring an inverse condemnation action under N.C. Gen. Stat. § 40A-51 (2009). Due to the fact that defendant is a public authority organized under N.C. Gen. Stat. § 162A-3.1, the trial court has subject matter jurisdiction over plain-

tiffs' claim pursuant to N.C. Gen. Stat. § 162A-18 (2009), which provides that:

> Any riparian owner alleging an injury as a result of any act of an authority created under this Article may maintain an action for relief against the acts of the authority either in the county where the lands of such riparian owner lie or in the county in which the principal office of the authority is maintained.

Defendant's argument that any inverse condemnation claim is defined by the parameters and rights set out in the impoundment statutes and the EMC certificate is misplaced. The EMC Certificate only authorizes defendant the right to exercise eminent domain by diverting the waters and does not concern plaintiffs' right to compensation.

Plaintiffs are not required to intervene in defendant's applications for the EMC certificate or 404 permit because they are not challenging defendant's right to divert water from the Deep River or construct the Randleman Dam, but are asking to be compensated as a result of the reduction of water flow. A lack of subject matter jurisdiction for failure to exhaust administrative remedies "does not apply where the judicial remedy sought is not available under the administrative process." *Hemric v. Groce*, 154 N.C. App. 393, 399-400, 572 S.E.2d 254, 258 (2002). Even if plaintiffs did intervene in the permitting application, there is nothing that grants the Environmental Management Commission or the Department of the Army authority to award compensation as a result of defendant's taking.

The issuance of a permit does not alter the rights of the property owners to seek just compensation. *See Hudson*, 665 F. Supp. at 447 (concluding that if a riparian owner suffers injury by a diversion of the natural water flow the owner should address those rights in civil action for injunctive relief or damages). Plaintiffs are not challenging the EMC certificate or defendants' right to exercise eminent domain, but are asking only to be compensated as a result of the diverted waters. The trial court properly concluded that plaintiffs had no administrative remedies to exhaust before bringing their inverse condemnation claim against defendant.

## VII. Method of Valuation

[4] Defendant also maintains the following conclusion of law was error:

> The direct impact of [defendant's] taking of Plaintiffs' riparian rights can therefore be valued by the loss of electricity capable of

being produced by each of the Operational Plants as a result of the reduction of the natural stream flow of the Deep River across Plaintiffs' property.

We reject defendant's argument.

When determining just compensation in a partial taking, the trial court can "admit any relevant evidence that will assist the jury in calculating the fair market value of property and the diminution in value caused by condemnation." *M.M. Fowler*, 361 N.C. at 6, 637 S.E.2d at 890. "Accepted methods of appraisal in determining fair market value include: (1) the comparable sales method, (2) the cost approach, and (3) the capitalization of income approach." *City of Statesville v. Cloaninger*, 106 N.C. App. 10, 16, 415 S.E.2d 111, 115 (1992).

In *Cloaninger*, we held that the capitalization of income approach was a permissible method to calculate the loss of the actual or projected income from a dairy farm that had been taken. *Id.* at 15, 415 S.E.2d at 114. Defendant's argument that *M.M. Fowler* prohibits a jury's considering evidence of lost business profits in condemnation actions is misplaced. The revenue derived directly from the property taken can be distinguished from the profits of a business located on the property. Contrary to the plaintiff in *M.M. Fowler*, plaintiffs in the present case are not seeking compensation for the value of the real property where their hydroelectric power plants are located, but seek compensation for the value of the property taken. *See id.* at 3-4, 637 S.E.2d at 888.

The amount of electricity that plaintiffs can generate is dependent upon the amount of water flow in the Deep River. The trial court found that the Randleman project has and will continue to significantly reduce the flow of water downstream. Therefore, the capitalization of income approach used by the trial court is a reasonable method to calculate plaintiffs' compensation. We overrule this assignment of error.

### VIII. Conclusion

For the above mentioned reasons, we affirm the order of the trial court.

Affirmed.

Judges GEER and STEPHENS concur.