BOARD OF TRANSPORTATION v. TERMINAL WAREHOUSE CORPORATION; PILOT FREIGHT CARRIERS, INC., Lessee

No. 57

(Filed 15 July 1980)

1. **Eminent Domain § 2.2— action to condemn portion of property—dead-ending of highway not compensable**

    The trial court did not err in instructing the jury that defendant was not entitled to compensation for the decreased value of its land as a result of the dead-ending and reclassification of the roadway which abutted on its property, even if property belonging to defendant was appropriated, since noncompensable injuries to property values resulting from enactment of valid traffic regulations do not become compensable merely because some property was coincidentally taken in connection with a project which put the regulations into effect.

2. **Eminent Domain § 2.6; Waters and Watercourses § 1— change in surface water drainage—reasonable use rule inapplicable in condemnation proceedings**

    The reasonable use rule, pursuant to which a possessor of land incurs liability for interference with the flow of surface waters only when such interference is unreasonable and causes substantial damage, governs the disposal of surface waters among private parties and has no application in condemnation proceedings, since the principle of reasonable use is superseded by the constitutional mandate that just compensation must be paid when private property is taken for public use.

Board of Transportation v. Warehouse Corp.

3. Evidence § 47.1— expert testimony—necessity for statement of facts as basis for opinion

    Whether an expert testifying from personal knowledge must first relate the underlying facts before giving his opinion is a matter left to the sound discretion of the trial judge.

APPEAL by defendants from decision of the Court of Appeals, 44 N.C. App. 81, 260 S.E. 2d 696 (1979) (*Robert Martin, J.,* dissenting in part), affirming judgment of trial court.

This is a proceeding initiated by plaintiff to condemn a .16 acre strip of land from a 2.85 acre tract owned by defendant Terminal Warehouse Corporation.

Defendant Terminal Warehouse Corporation has a trucking terminal warehouse on its tract which it leases to defendant Freight Carriers, Inc. Since giving joint oral notice of appeal from the judgment of the trial court, defendants have proceeded as a single appellant under Rule 5, Rules of Appellate Procedure. Hereafter, we will refer to the parties appellant in the singular.

The tract owned by defendant was rectangular. On its western border the tract had a frontage of 296 feet on a roadway then known as U.S. Highway 74. Legal access to this roadway, which runs from north to south, was available along the entire 296 feet of frontage. Gashes Creek entered the tract from the west and flowed eastward on a course roughly parallel with and slightly north of its southern boundary.

The .16 acre strip taken is a narrow triangular strip lying along the southern boundary of the 2.85 acre tract. The strip fronted the roadway for 38 feet at the western boundary and ran back to a point at the southeast corner of the tract. A substantial portion of the condemned strip was covered by the stream bed of Gashes Creek.

The .16 acre strip was condemned as part of a project to relocate U.S. Highway 74 and to construct a portion of Interstate 40 and its connectors near Asheville in Buncombe County. Pursuant to this project, the portion of U.S. 74 which abutted on defendant's property was dead-ended at a point about 50 feet north of the southwest corner of defendant's 2.85 acre tract and reclassified as a secondary road. Additionally, it was necessary to divert the course of Gashes Creek as it entered defendant's tract

in order to accommodate the new drainage patterns resulting from the dead-ending of former U.S. 74 and the construction of Interstate 40. Accordingly, a concrete retaining wall was built on the appropriate strip which caused Gashes Creek to enter the strip from the south and make a 90 degree turn eastward onto the old stream bed. Formerly, Gashes Creek entered the appropriated strip from the west. The concrete retaining wall received runoff from new culverts installed to accommodate the runoff from Interstate 40 and relocated U.S. 74.

The sole issue tried in this proceeding was the just compensation due defendant for the taking of its property. Defendant presented evidence tending to show, in pertinent part, that in times of heavy rainfall occurring since construction of the project, water from Gashes Creek comes over the top of the concrete retaining wall and flows upon defendant's remaining land, hindering its use as a trucking terminal. Evidence was also presented tending to show that trucks from the freight terminal had to travel an extra mile over connector roads in order to reach relocated U.S. 74.

The matter was submitted to a jury which awarded compensation of $2,000. Defendant appealed to the Court of Appeals contending that the trial judge erroneously instructed the jury on how they were to assess damages from the relocation of U.S. 74 and the diverted flood waters of Gashes Creek in determining just compensation for defendant. The Court of Appeals affirmed with Judge Robert Martin dissenting in part. Defendant appealed as of right to the Supreme Court pursuant to G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General; R. Bruce White, Jr., Senior Deputy Attorney General, by Frank P. Graham, Assistant Attorney General, for plaintiff appellee.*

*Bennett, Kelly & Cagle, P.A., by Harold K. Bennett, for defendant appellant.*

HUSKINS, Justice.

Pursuant to its power of eminent domain, plaintiff initiated condemnation proceedings and took possession of a .16 acre strip of land from a 2.85 acre tract owned by defendant.

The sole issue tried in this condemnation proceeding was the just compensation due defendant for the taking of its property for public use. The questions raised concern the elements of damages which should be considered in determining the amount of compensation to be paid the landowner.

Defendant's property was taken pursuant to a project involving the relocation of U.S. Highway 74 and the construction of a portion of Interstate 40. Formerly, defendant's property abutted on a roadway which was a part of U.S. 74, a major traffic artery. As a result of the project, this roadway was dead-ended and downgraded into a secondary road. Highway 74 was relocated to the west. Defendant must now travel approximately one mile by connector roads to reach relocated Highway 74. Defendant's access to the roadway remains unchanged. Only the status of the roadway has changed.

[1] Defendant contends the trial court erred in instructing the jury that defendant was not entitled to compensation for the decreased value of its land as a result of the dead-ending and reclassification of the roadway which abuts on its property.

Defendant concedes the enactment of valid traffic regulations which change traffic patterns and cause circuity of travel but do not foreclose reasonable access to the roadway from abutting property are proper exercises of the police power for which no compensation need be made. *See Wofford v. Highway Commission,* 263 N.C. 677, 140 S.E. 2d 376, *cert. denied,* 382 U.S. 822 (1965); *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732 (1962). Nor does defendant deny that the dead-ending and reclassification of the roadway on which its property abutted are valid traffic regulations for which no compensation is ordinarily required. Defendant does contend, however, that the above principles apply only where no land is taken in connection with a project to put the new traffic regulations into effect. If such a taking occurs, defendant argues, a landowner is entitled to be compensated for the decrease in value to his remaining land caused by the traffic regulations.

This contention was advanced and specifically rejected in *Barnes v. Highway Commission, supra,* 257 N.C. at 518. Noncompensable injuries to property values resulting from enactment of valid traffic regulations do not become compensable merely

Board of Transportation v. Warehouse Corp.

because some property was coincidentally taken in connection with a project which put the regulations into effect. "The fact that [such] loss is coincident with an appropriation of land in no way changes the noncompensable character of the damage." *Richley v. Jones*, 38 Ohio St. 2d 64, 310 N.E. 2d 236 (1974). The decrease in land values attributable to diminished traffic flow or circuity of travel is not appreciably enhanced by the additional fact that property has been appropriated. Fairness dictates that the burden of such noncompensable injury be equally absorbed by all similarly situated landowners without regard to whether the property of some has been appropriated. In the instant case, the evidence indicated that the property values of neighboring landowners whose property was not appropriated were equally affected by the relocation of U.S. 74. It would be manifestly unfair to deny compensation to these landowners and yet allow defendant compensation for the same injury on the basis of a coincidental appropriation of land by the Board of Transportation.

Accordingly, we hold that the trial court did not err in instructing the jury that defendant was not entitled to compensation for the decreased value of its land as a result of the dead-ending and reclassification of the roadway which abuts on its property.

The .16 acre strip of land taken in this proceeding was used to redirect the course of Gashes Creek. A concrete retaining wall was built on this strip which caused Gashes Creek to enter the strip from the south and then caused it to make a 90 degree turn eastward. Gashes Creek was relocated in order to accommodate new drainage patterns resulting from the dead-ending of former U.S. 74, which ran along the western boundary of defendant's 2.85 acre tract and the construction of a portion of Interstate 40 and its connector roads.

Defendant's evidence indicated that in times of heavy rain Gashes Creek overflowed the retaining wall built by plaintiff. This water flowed on defendant's remaining land and hindered its use as a trucking terminal. Defendant's evidence further indicated that the retaining wall could not handle the increased volume of runoff being discharged into it at greater velocities from the altered drainage basin created by Interstate 40 and its connectors.

[2]  The second question presented for review is whether the trial court correctly instructed the jury on how it should consider evidence of damage to defendant's remaining land caused by the diverted flood waters of Gashes Creek. The trial court instructed that such damages could be considered only if plaintiff had unreasonably interfered with the flow of surface waters. This instruction applies the rule of reasonable use with respect to surface water drainage adopted in *Pendergrast v. Aiken,* 293 N.C. 201, 236 S.E. 2d 787 (1977). Under this rule, a possessor of land incurs liability for interference with the flow of surface waters only when such interference is "unreasonable and causes substantial damage." *Id.,* 293 N.C. at 216.

Defendant contends the reasonable use rule adopted in *Pendergrast* concerns itself with the balancing of conflicting private interests in the use of water resources and should have no application in a condemnation proceeding, which involves a taking of private property for public use. We agree. For reasons which follow, we hold that the reasonable use doctrine, which governs the disposal of surface waters among private parties, has no application in condemnation proceedings.

*Pendergrast v. Aiken, supra,* was a dispute between private landowners in which it was alleged that defendants had improperly diverted surface waters onto plaintiff's property and caused them damage. The discussion in that case related exclusively to the rights and duties among private landowners with respect to surface water drainage. Specifically, the doctrine of reasonable use adopted in *Pendergrast* defines the extent to which a private landowner may interfere with the flow of surface water on the property of another. This doctrine presupposes that all private landowners must accept a reasonable amount of interference with the flow of surface water by other private landowners if a fair and economical allocation of water resources is to be achieved. The conclusion reached in *Pendergrast* is that a rule of reasonable use with respect to water rights is the best way to promote the orderly utilization of water resources by private landowners.

In the instant case, however, the interference with the drainage of surface waters is attributed not to a private landowner but to an entity possessing the power to appropriate private property

for public use. Where the interference with surface waters is effected by such an entity, the principle of reasonable use articulated in *Pendergrast* is superseded by the constitutional mandate that "[w]hen private property is taken for public use, just compensation must be paid." *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144 (1955). It follows, therefore, "that a body possessing the right to exercise the power of eminent domain is required to make compensation for damages to land not taken resulting from the obstruction or diversion of, or other interference with, the natural flow of surface water, by a public improvement, *although a private landowner would not be liable in damages under the same circumstances,* upon the ground that such obstruction, diversion, or interference is a taking or damaging of such land within the meaning of a constitutional provision requiring compensation to be made on the taking or damaging of private property for public use." 26 Am. Jur. 2d, Eminent Domain § 195 at 877 (emphasis added). *Accord, Dunlap v. Light Co.,* 212 N.C. 814, 195 S.E. 43 (1938); 2A Nichols, Law of Eminent Domain § 6.446 (rev. 3d ed. 1979); Annot., 128 A.L.R. 1195 § 3 (1940).

*Dunlap v. Light Co., supra,* was an action by a private landowner against a power company having the power of eminent domain. It should be noted that at the time *Dunlap* was decided this Court had already adopted the rule of reasonable use with respect to riparian rights. *See* Aycock, Introduction to Water Use Law in North Carolina, 46 N.C. L. Rev. 1, 6 (1967). Plaintiff in *Dunlap* alleged two distinct causes of action against defendant power company: (1) unreasonable interference with his riparian rights, (2) appropriation or taking of his property without just compensation. Plaintiff's evidence tended to show that due to the peculiar location of his property, the release of water from defendant's hydroelectric dam on the Yadkin River was eroding the river bank of his property in a manner not common to other lower riparian owners. The sole issue on appeal was whether plaintiff's evidence was sufficient to survive nonsuit. After an extensive and illuminating discussion of the reasonable use rule, Justice Barnhill (later Chief Justice) concluded that plaintiff's evidence failed to show that defendant was making an unreasonable use of the Yadkin River to the hurt and detriment of plaintiff's riparian rights. Nonetheless, Justice Barnhill further

concluded that plaintiff's evidence was sufficient to establish a taking of property without just compensation:

> "The evidence tends to show that in this respect, to some extent at least, by reason of the peculiar location of the plaintiff's land not common to other lower riparian owners the defendant is taking or appropriating the property of the plaintiff without compensation. If these facts are established to the satisfaction of the jury the defendant is indebted to the plaintiff for the reasonable value of the land taken, or the damage so done, without regard to the reasonableness of the use it is making of the waters of Yadkin River in the operation of its plant. It cannot take the property of the plaintiff without just compensation, even though it is a result of a reasonable use of its own property."

Similarly, in the instant case, the Board of Transportation is indebted to defendant for any damages caused to defendant's remaining land by the diverted flood waters of Gashes Creek without regard to whether the diversion of Gashes Creek on the .16 acre strip appropriated constitutes a reasonable interference with the flow of surface waters. Application of the reasonable use rule in the present context precludes defendant from receiving the just compensation to which he is constitutionally entitled. Accordingly, we conclude that the trial court committed prejudicial error in instructing the jury to apply the rule of reasonable use as enunciated in *Pendergrast v. Aiken, supra,* when considering the damages caused to defendant's remaining land by the diverted flood waters of Gashes Creek.

Defendant has also brought forward a number of assignments relating to certain evidentiary rulings of the trial court.

Defendant contends the trial court erred in excluding the opinion of its expert witness as to how many times Gashes Creek would leave its banks in the area where its course had been diverted. Presumably, the challenged opinion would have been based on facts within the expert's own knowledge. However, prior to being asked for his opinion, the expert did not present the data he had utilized to arrive at his conclusions.

[3] The question presented is whether an expert who is testifying from personal observation is required to relate the underlying facts prior to giving his opinion.

In general, when the facts upon which an expert bases his opinion "are all within the expert's own knowledge, he may relate them himself and then give his opinion; or, within the discretion of the trial judge, he may give his opinion first and leave the facts to be brought out on cross-examination." 1 Stansbury, N. C. Evidence § 136 at 446 (Brandis rev. 1973). Conversely, the trial judge, in his discretion, may require the expert to state the supporting facts before expressing his opinion. *State v. Hightower*, 187 N.C. 300, 121 S.E. 616 (1924). It thus appears that whether an expert testifying from personal knowledge must first relate the underlying facts before giving his opinion is a matter left to the sound discretion of the trial judge.

In the instant case, defendant's expert did not testify as to his knowledge of the average rainfall in the Gashes Creek watershed and other pertinent factors prior to giving his opinion as to how often Gashes Creek would leave its banks at the point where its course had been diverted. The better and safer practice dictates that the expert first testify to these underlying facts and then express his opinion. *See State v. Hightower, supra.* In any event, the trial judge properly exercised his discretion, as the rule permits, in sustaining objection to the challenged opinion.

The remaining evidentiary assignments are not likely to recur on retrial of this case and therefore merit no discussion.

For the reasons stated the decision of the Court of Appeals is reversed. The case is remanded to that court where it will be certified to the trial court for a new trial in accord with this opinion.

Reversed and remanded.