DILLON, Judge.
 

 *21
 
 This matter involves a
 
 partial
 
 taking by Plaintiff, the Department of Transportation ("DOT"), of land owned by Defendants (the "Riddles") as part of DOT's plan to re-route a section of NC Highway 24 in Cumberland County. This appeal is from an interlocutory order in which the trial court determined
 
 how much
 
 of the Riddles' entire land holdings in the relevant area constitute the "entire tract" for purposes of determining just compensation.
 

 I. Factual Background
 

 In 2002, Joseph Riddle acquired 26 acres of land on the northeast corner of two state roads. The land was bounded on the south by NC Highway 24 (a major east-west thoroughfare) and bounded on the west by Maxwell Road. Mr. Riddle acquired the land in order to develop a shopping center facing NC Highway 24 and to develop outparcels fronting NC Highway 24 and an outparcel fronting Maxwell Road.
 

 Shortly after the purchase, Mr. Riddle subdivided the 26-acre parcel into seven (7) separate lots, referred to herein as Lots 1-7. In 2005, Mr. Riddle sold one of the outparcels fronting NC Highway 24 (Lot 5) to a fast-food restaurant developer. Mr. Riddle still controls the other six lots.
 

 Lot 1 is the largest of the seven lots at over 9 acres, and is where Mr. Riddle has since developed the shopping center.
 
 [2]
 
 The shopping center is anchored by a Food Lion grocery store and a Family Dollar retail store.
 

 *22
 
 Lot 2 is an undeveloped outparcel which fronts Maxwell Road to the west of the shopping center. Lots 3, 4 and 6 are undeveloped outparcels fronting NC Highway 24 in front of the shopping center.
 

 Lot 7 is an undeveloped lot, shaped like an upside-down "L," fronting both NC Highway 24 and Maxwell Road. The main portion of this lot fronts NC Highway 24, just east of the shopping center lot, and runs behind the shopping center lot (Lot 1) and along the north side of Lot 2 where it fronts Maxwell Road.
 

 Years ago, DOT adopted a plan to re-route the traffic flow of NC Highway 24 from the front of the shopping center and most of the outparcels to behind the shopping center. The DOT plan called for the portion of NC Highway 24 being replaced to remain as a secondary access road.
 

 *451
 
 II. Procedural Background
 

 In 2012, as part of its plan to re-route NC Highway 24, DOT commenced this action
 
 [3]
 
 by filing a complaint and declaration of taking for portions of Lot 2 and Lot 7. No portions of Lot 1 or Lots 3-6 were taken. In its Declaration of Taking, DOT identified only Lots 2 and 7 as land "affected" by the taking. The Riddles responded by alleging that all seven lots constitute a single tract for purposes of DOT's taking and, therefore, should be considered together by a jury in determining damages.
 

 In 2014, the trial court entered an order concluding that the jury could only consider the effect of the taking on Lots 2 and 7. The Riddles appealed that order to this Court. In 2015, we remanded the matter, ordering the trial court to determine whether any of the other five lots should be unified with Lots 2 and 7 for purposes of determining just compensation.
 
 See
 

 D.O.T. v. Riddle
 
 ,
 
 241 N.C. App. 399
 
 ,
 
 775 S.E.2d 36
 
 (2015) (unpublished).
 

 On remand, the trial court conducted another pre-trial hearing and ordered that Lot 1 be unified with Lots 2 and 7 for purposes of determining just compensation. The Riddles appealed, contending that the effect of the taking on the other four lots should be considered by the jury. DOT cross-appealed, contending that the trial on damages should not include Lot 1 and should be limited to the effect the taking had on Lots 2 and 7.
 

 *23
 
 III. Appellate Jurisdiction
 

 This appeal is interlocutory, as the jury trial on damages has yet to occur. And "[g]enerally, there is no right of immediate appeal from interlocutory orders and judgments."
 
 Goldston v. Am. Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 725,
 
 392 S.E.2d 735
 
 , 736 (1990). However, "immediate appeal is available from an interlocutory order or judgment which affects a substantial right."
 
 Sharpe v. Worland
 
 ,
 
 351 N.C. 159
 
 , 162,
 
 522 S.E.2d 577
 
 , 579 (1999). We hold that, for the reasons stated below, the trial court's pre-trial order affects a substantial right.
 

 This appeal is from an order entered by the trial court from a hearing held pursuant to
 
 N.C. Gen. Stat. § 136-108
 
 , in which the trial court is to decide important issues before the jury trial on damages takes place. It is important to note what this appeal is about and what it is not about in determining whether the appeal affects a substantial right. This appeal is not about any determination regarding the land actually
 
 taken
 
 by DOT. There is no disagreement in this regard. DOT has physically taken slivers from Lots 2 and 7 along Maxwell Road, and nothing else. Rather, this appeal is about the trial court's determination regarding the land
 
 affected
 
 by the taking; that is, which lots should constitute the "entire tract."
 

 Our case law is somewhat nuanced on the question of whether an interlocutory order determining boundaries of the "entire tract" affects a substantial right.
 

 In 1967, our Supreme Court held that an interlocutory order determining the land
 
 actually taken
 
 had to be appealed
 
 before
 
 the trial on damages in order to be preserved for appellate review.
 
 N.C. State Highway Comm'n v. Nuckles
 
 ,
 
 271 N.C. 1
 
 , 15,
 
 155 S.E.2d 772
 
 , 784 (1967).
 

 In 1999, our Supreme Court limited
 
 Nuckles
 
 , holding that an appeal from an interlocutory order determining the land
 
 affected
 
 -that is, the land which constitutes the "entire tract"-could be brought
 
 after
 
 the jury trial on damages.
 
 Dep't of Transp. v. Rowe
 
 ,
 
 351 N.C. 172
 
 ,
 
 521 S.E.2d 707
 
 (1999). Unlike in
 
 Nuckles
 
 , the issue in
 
 Rowe
 
 was not the land actually taken, but rather the land affected, that is, the land to be incorporated into the "entire tract." In
 
 Rowe
 
 , our Supreme Court considered an appeal of a pre-trial order denying the landowner's attempt to incorporate two additional lots into the "entire tract"
 
 after
 
 the jury trial on damages. DOT argued that the landowner lost his right to appeal the trial court's determination because he did not appeal prior to the trial on damages. The
 
 Rowe
 
 Court, however, distinguished its holding in
 
 Nuckles
 
 and held that
 
 *24
 
 a landowner does not lose the right to appeal a pre-trial
 
 *452
 
 order determining the scope of the "entire tract" if the appeal is not taken immediately. The
 
 Rowe
 
 Court gave alternate reasons for its holding to distinguish a pre-trial order determining the land
 
 actually taken
 
 from a pre-trial order which merely determines
 
 the land affected
 
 by the taking. First, the Court stated that the pre-trial order refusing to incorporate lots into the "entire tract" did not affect a substantial right in that case. Second, the Court stated that even if the order did affect a substantial right, the landowner was still not
 
 required
 
 to appeal prior to the jury trial on damages but was free to wait until final judgment.
 
 Rowe
 
 ,
 
 351 N.C. at 176
 
 ,
 
 521 S.E.2d at 709
 
 .
 

 Four years later, in 2003, our Court cited both
 
 Rowe
 
 and
 
 Nuckles
 
 in concluding that it had appellate jurisdiction to consider an interlocutory order determining the land affected by a partial taking, specifically holding that the issue addressed in the pre-trial order was a "vital preliminary issue."
 
 Dep't of Transp. v. Airlie Park, Inc.
 
 ,
 
 156 N.C. App. 63
 
 , 65-66,
 
 576 S.E.2d 341
 
 , 343 (2003). Essentially, our Court read
 
 Rowe
 
 as not foreclosing the possibility that a substantial right might be affected by a trial court's pre-trial order regarding unification of lots where there was otherwise no disagreement as to the actual land taken. Indeed, the
 
 Rowe
 
 Court recognized that "[w]hether an interlocutory ruling affects a substantial right requires consideration of the particular facts of that case[.]"
 
 Rowe
 
 , 351 N.C. at 175,
 
 521 S.E.2d at 709
 
 (internal marks omitted). Ultimately, the
 
 Airlie
 
 Court concluded that the trial court's determination was "vital," based on the particular facts of that case.
 

 More recently, in 2015, our Supreme Court exercised appellate jurisdiction to reach the merits of an interlocutory appeal of a pre-trial order, holding that a landowner's adjacent parcel should be unified with the landowner's parcel from which land was physically taken by a municipality.
 
 See
 

 Town of Midland v. Wayne
 
 ,
 
 368 N.C. 55
 
 ,
 
 773 S.E.2d 301
 
 (2015). The
 
 Midland
 
 Court, though, did not cite
 
 Rowe
 
 nor did it directly address the jurisdictional issue.
 

 Finally, a panel of this Court held in the first appeal of this present matter that the trial court's pre-trial order refusing to unify some of the Riddles' lots constitutes " 'a vital preliminary issue' to [this] proceeding and, therefore, affects a substantial right."
 
 See
 

 Riddle
 
 , 775 N.C. at *4. Our Supreme Court has held that "[o]nce a panel of the Court of Appeals has decided a question in a given case that decision becomes the law of the case and governs other panels which may thereafter consider the case."
 

 *25
 

 North Carolina National Bank. v. Virginia Carolina Builders
 
 ,
 
 307 N.C. 563
 
 , 567,
 
 299 S.E.2d 629
 
 , 631-32 (1983).
 
 [4]
 

 The question of appellate jurisdiction in this case is a close one.
 
 Rowe
 
 could be construed as definitively holding that an interlocutory order which merely defines the boundaries of the "entire tract" does not affect a substantial right. However, based on the principles advanced in all the cases cited above, we conclude that we have appellate jurisdiction and proceed to address the merits of this appeal.
 

 IV. Analysis
 

 A. Condemnation Procedure
 

 The main issue on appeal is whether the trial court erred in determining that the area affected by DOT's taking for purposes of determining just compensation was comprised of Lots 1, 2 and 7, but not Lots 3-6. Before addressing this specific issue in this case, we first review some basics in condemnation law.
 

 *453
 
 When the DOT takes land for a highway project, the divested owner is entitled to just compensation under the "Law of the Land" clause found in Article I, section 19 of our Constitution.
 
 Yancey v. N.C. State Highway
 
 ,
 
 222 N.C. 106
 
 , 108,
 
 22 S.E.2d 256
 
 , 258-59 (1942)
 
 [5]
 
 .
 

 *26
 
 A condemnation action involves a two-step process. First, prior to the jury trial on damages, the
 
 trial court
 
 is tasked with deciding "all issues raised by the pleadings other than the issue of damages."
 
 N.C. Gen. Stat. § 136-108
 
 . After the trial court has decided these preliminary issue, a
 
 jury
 
 is then empaneled and tasked with determining the amount that constitutes "just compensation" for the taking.
 

 Our General Assembly has provided that where there has been a partial taking, where the DOT has only taken a portion of the landowner's property, the measure of damages is "the difference between the fair market value of
 
 the landowner's entire tract
 
 immediately prior to the taking and the fair market value of the remainder immediately after the taking ...."
 
 N.C. Gen. Stat. § 136-112
 
 (2) (emphasis added).
 

 Identifying which land constitutes the affected landowner's "entire tract" for purposes of determining just compensation is not a point of contention where a partial taking is from the only lot in the immediate area owned by the affected landowner. However, the identity of the "entire tract" can be an issue, as is the case here, where the landowner has an interest in a lot or lots
 
 in addition to
 
 the lot(s) from which the physical taking is made. For instance, DOT may seek to include the landowner's adjacent lot(s) as part of the "entire tract," believing that a proposed road will increase the value of the landowner's adjacent lots, thereby reducing or eliminating the amount of the just compensation DOT would be required to award. Conversely, such as in the present matter, it is sometimes the landowner who seeks to include an adjacent lot or lots within the "entire tract," believing that DOT's project will diminish not only the value of the lot(s) from which the taking is made, but also the value of adjacent lot(s).
 

 In North Carolina, the
 
 before and after values
 
 of the "entire tract" are questions to be decided by a jury. However, our Supreme Court has held that the process of identifying which of the affected landowner's lots constitute the "entire tract" is generally a question of law to be decided by the trial court.
 
 Barnes v. North Carolina State Highway Comm'n
 
 ,
 
 250 N.C. 378
 
 , 384,
 
 109 S.E.2d 219
 
 , 224 (1959) ("Ordinarily the question [of] whether two or more parcels of land constitute one tract for the purpose of assessing damages for injury to the portion not taken ... is one of law for the court.");
 
 see also
 

 Town of Midland
 
 ,
 
 368 N.C. at 66
 
 ,
 
 773 S.E.2d at 309
 
 (determining as a matter of law that a landowner's adjacent parcel was part of the "entire tract" injured by the taking). In other words, before a jury can properly determine the amount of just compensation based on the before and after values of the landowner's
 
 *27
 
 entire tract, the trial court must first determine which of the affected landowner's lots constitute the "entire tract."
 

 B. Classification of Lots
 

 In this action, DOT took portions of Lots 2 and 7. The trial court determined that the "entire tract" for purposes of the jury trial on just compensation would include Lots 1, 2 and 7. On appeal, DOT contends that Lot 1 should be excluded. The Riddles contend that Lots 3-6 should be included.
 

 In determining which lots are part of the "entire tract," the Supreme Court has instructed as follows:
 

 *454
 
 There is no single rule or principle established for determining the unity of lands[.] The factors most generally emphasized are [1] unity of ownership, [2] physical unity[,] and [3] unity of use. ... The respective importance of these factors depends upon the factual situations in individual cases. Usually unity of use is given greatest emphasis.
 

 Barnes
 
 ,
 
 250 N.C. at 384
 
 ,
 
 109 S.E.2d at 224-25
 
 .
 

 In the present case, unity of
 
 ownership
 
 exists, except with respect to Lot 5, the outparcel which was sold to the fast-food restaurant developer in 2005. Joseph Riddle has a quantum of ownership in the remaining tracts, owning Lots 2, 3, 4, 6, and 7 with his wife, and owning Lot 1 as the controlling member of the entity which owns Lot 1, where the shopping center is located.
 
 See
 

 Town of Midland
 
 ,
 
 368 N.C. at 67
 
 ,
 
 773 S.E.2d at 309
 
 .
 

 Also,
 
 physical
 
 unity exists with respect to all of the lots, as each lot is contiguous to at least one of the other lots. We note that physical unity does not require that each of the lots be directly contiguous with either Lot 2 or Lot 7, the lots from which DOT actually took land.
 

 However, we hold that the factor which controls in the present case is unity of
 
 use
 
 .
 
 See
 

 Town of Midland
 
 ,
 
 368 N.C. at 65
 
 ,
 
 773 S.E.2d at 308
 
 (stating that unity of use is "given [the] greatest emphasis");
 
 see also
 

 Barnes
 
 ,
 
 250 N.C. at 385
 
 ,
 
 109 S.E.2d at 225
 
 (stating that "the factor most often applied and controlling in determining whether land is a single tract is unity of use").
 

 Our Supreme Court has stated that for an adjacent lot to be incorporated based on unity of use, the lot must "be presently, actually, and permanently used in such a manner that the enjoyment of the [lot] taken is
 
 *28
 
 reasonably and substantially necessary to the enjoyment of the remaining [lot]."
 
 Town of Midland
 
 ,
 
 368 N.C. at 65
 
 ,
 
 773 S.E.2d at 308
 
 (quoting
 
 Bd. of Transp. v. Martin
 
 ,
 
 296 N.C. 20
 
 , 29,
 
 249 S.E.2d 390
 
 , 396 (1978) ).
 

 Here, DOT has taken portions of an undeveloped outparcel (Lot 2) and the back corner of another undeveloped tract (Lot 7). The Riddles argue that all seven lots are part of an "integrated economic unit," the test found in N.C. Gen. Stat. § 40A-67, but which has been applied to takings by the DOT.
 
 See
 

 North Carolina Dep't of Transp. v. Nelson Co.
 
 ,
 
 127 N.C. App. 365
 
 , 368,
 
 489 S.E.2d 449
 
 , 451 (1997).
 

 Our Supreme Court described the "integrated economic unit" test in a DOT case as follows:
 

 [T]here must be such a connection, or relation of adaptation, convenience, and actual and permanent use between them, as to make the enjoyment of the parcel taken, reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used. ... The unifying use must be a
 
 present
 
 use.
 

 Barnes
 
 ,
 
 250 N.C. at 385
 
 ,
 
 109 S.E.2d at 224
 
 .
 

 In the present case, the re-routing of NC Highway 24 has impacted all of the lots. The value of the shopping center and the outparcels are impacted by the fact that they will no longer be fronting a well-traveled highway. However, our Supreme Court has held that any damage caused by the re-routing of traffic patterns is generally not compensable where reasonable access to a public road is provided.
 
 Board of Transp. v. Terminal Warehouse Corp.
 
 ,
 
 300 N.C. 700
 
 , 703,
 
 268 S.E.2d 180
 
 , 182 (1980). And our Supreme Court further held that such "[n]oncompensable injuries to property ... do not become compensable merely because some property was coincidentally taken in connection with [the] project."
 
 Id.
 
 at 703-04,
 
 268 S.E.2d at 183
 
 .
 

 Therefore, in determining whether there is a unity of use between Lots 2 and 7 and the other lots, we are not to consider the impact that the re-routing of NC Highway 24 had on the other lots. Rather, we are only to consider if the portions of Lots 2 and 7 taken by DOT were "reasonably and substantially necessary to the enjoyment of the [other lots]."
 

 Following our Supreme Court's guidance in
 
 Barnes
 
 and
 
 Terminal Warehouse
 
 , we conclude as a matter of law that the portions of Lot 2 and of Lot 7 taken by DOT are not reasonably or substantially necessary to
 
 *29
 
 the
 
 *455
 
 Riddles ability to use and enjoy any of the other lots.
 
 [6]
 
 Accordingly, we affirm the trial court's conclusion that Lots 3-6 are not part of the "entire tract," but we reverse the trial court's conclusion that Lot 1 is part of the "entire tract."
 

 AFFIRMED IN PART, REVERSED IN PART.
 

 Judges BRYANT and CALABRIA concur.
 

 [2]
 

 Mr. Riddle transferred title to Lot 1 to an entity which he owns and controls.
 

 [3]
 

 DOT actually commenced two separate actions: (1) 12 CVS 3993 concerned Lot 2 and (2) 12 CVS 4714 concerned Lot 7.
 

 [4]
 

 We note that our Supreme Court later declined to rule definitively whether the "law of the case" principle applies to the issue of appellate jurisdiction; specifically, whether a second panel can revisit the question of appellate jurisdiction where a prior panel has already decided this legal issue in the case.
 
 See
 

 State v. Stubbs,
 

 368 N.C. 40
 
 , 44,
 
 770 S.E.2d 74
 
 , 76 (2015).
 
 Stubbs
 
 had produced majority, concurring, and dissenting opinions from our Court. The concurring and dissenting judges in
 
 Stubbs
 
 determined that the "law of the case" principle did
 
 not
 
 apply to jurisdictional determinations, and therefore that the Court was free to decide whether it had appellate jurisdiction, notwithstanding the holding of a prior panel on the issue.
 
 See
 

 State v. Stubbs
 
 ,
 
 232 N.C. App. 274
 
 ,
 
 754 S.E.2d 174
 
 (2014). However, this language in the concurring and dissenting opinions was dicta, and therefore not binding.
 

 [5]
 

 This right to just compensation for a public taking dates far back in our State's history.
 
 See, e.g.,
 

 Johnston v. Rankin
 
 ,
 
 70 N.C. 550
 
 , 555 (1874) ("Notwithstanding there is no clause in the Constitution of North Carolina which expressly prohibits private property from being taken for public use without compensation; ... yet the principle is so grounded in natural equity, that it has never been denied to be part of the law of North Carolina.");
 
 Raleigh and Gaston Rail Road Co. v. Davis
 
 ,
 
 19 N.C. 451
 
 , 459 (1837) ("[T]he right of property involves the right to precedent compensation for it, when taken for public use.");
 
 Trustees of University of North Carolina v. Foy
 
 ,
 
 5 N.C. 58
 
 , (1805) ("The Legislature [has] no authority to make an act, divesting one citizen of his [property] without just compensation.").
 

 [6]
 

 Had DOT taken a portion of the shopping center itself (Lot 1) rather than portions of Lot 2 and Lot 7, the Riddles might have a stronger argument for unification of the other lots since an existing shopping center with anchor tenants in place is generally necessary for the maximization of an outparcel. However, an undeveloped outparcel which is reduced in size does not generally affect the use and enjoyment of an existing shopping center or other outparcel lots. In sum, the other lots were damaged by DOT's decision to re-route traffic, an impact which is not compensable, rather than by the partial taking of portions of Lots 2 and 7.