ARROWOOD, Judge.
 

 *683
 
 Dennis T. Brown ("Brown") and Raquel Hernandez ("Hernandez") (together "plaintiffs") appeal from order granting summary judgment in favor of the Lattimore Living Trust (the "trust"), trustees William Timothy Lattimore and Pax Miller Lattimore (the "trustees"), and Proland Development, Inc. ("Proland") (together "defendants"). For the following reasons, we affirm in part and reverse in part.
 

 I.
 
 Background
 

 Plaintiffs initiated this action against defendants with the filing of a summons and a complaint in Wake County District Court on 17 May 2017. The complaint alleged that plaintiffs and the trust own adjacent property along Eton Road in Raleigh. Beginning in 2013, the trust made improvements to its property, "including installation of a brick wall and a metal fence along the property line separating the [properties]." Proland was hired by the trustees as the contractor for the wall. Plaintiffs alleged that during the installation of the brick wall, Proland came onto and damaged their property, and then failed to restore their property to its original condition as was agreed upon. Plaintiffs further alleged that the metal fence crosses a drainage ditch and, during heavy rains, causes debris to accumulate in the ditch and divert water, causing erosion on plaintiffs' property. Based on these allegations, plaintiffs asserted claims against defendants for (1) trespass, (2) breach of contract, and (3) nuisance.
 

 After Proland filed its initial response on 12 June 2017 denying the material allegations, on 7 July 2017, plaintiffs filed a motion for summary judgment as to Proland with an attached affidavit of Brown. Proland filed an amended answer on 20 July 2017, in which it asserted various affirmative defenses. The trust and the trustees filed an answer with affirmative defenses and counterclaims on 27 July 2017. On 14 August 2017, Proland's president filed an affidavit.
 

 Plaintiffs' motion for summary judgment was set to be heard on 17 August 2017; but when no one appeared for the hearing, the trial court
 
 *684
 
 dismissed the motion without prejudice. Later that afternoon, plaintiffs filed a withdrawal of their motion for summary judgment as to Proland, which appears to have been signed two days prior. Plaintiffs
 
 *829
 
 subsequently filed a response to the trust's counterclaims on 25 August 2017.
 

 On 20 March 2018, defendants filed a motion for summary judgment asserting that summary judgment was proper because "(a) [p]laintiffs' claims are barred, as a matter of law, by the applicable statutes of limitations, and/or (b) there is no genuine issue of material fact as to [p]laintiffs' claims and [d]efendants are entitled to summary judgment as a matter of law." A second affidavit of Brown was filed with exhibits on 7 May 2018 and defendants filed plaintiffs' depositions for the trial court's consideration.
 

 Defendants' motion for summary judgment was heard in Wake County District Court before the Honorable Ned W. Mangum on 10 May 2018. On 16 May 2018, the trial court entered an order granting defendants' motion for summary judgment. Defendants then filed a notice of voluntary dismissal dismissing their counterclaims against plaintiffs without prejudice on 27 June 2018. Plaintiffs filed notice of appeal from the 16 May 2018 summary judgment order on 16 July 2018.
 

 II.
 
 Discussion
 

 On appeal, plaintiffs contend the trial court erred by entering summary judgment on each of their three claims: trespass, breach of contract, and nuisance.
 

 "Our standard of review of an appeal from summary judgment is
 
 de novo
 
 ; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' "
 
 In re Will of Jones
 
 ,
 
 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (quoting
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007) ).
 

 "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. Moreover, the party moving for summary judgment bears the burden of establishing the lack of any triable issue."
 
 Dalton v. Camp
 
 ,
 
 353 N.C. 647
 
 , 651,
 
 548 S.E.2d 704
 
 , 707 (2001) (citations omitted). The moving party may meet that burden by showing "either that (1) an essential element of the non-movant's claim is nonexistent; (2) the non-movant is unable to produce evidence which supports an essential element of its claim; or, (3) the non-movant cannot overcome affirmative defenses raised in contravention of its claims."
 

 *685
 

 Anderson v. Demolition Dynamics, Inc.
 
 ,
 
 136 N.C. App. 603
 
 , 605,
 
 525 S.E.2d 471
 
 , 472,
 
 disc. review denied
 
 ,
 
 352 N.C. 356
 
 ,
 
 544 S.E.2d 546
 
 (2000).
 

 Ordinarily, the question of whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes one of law, and summary judgment is appropriate. Further, when the party moving for summary judgment pleads the statute of limitations, the burden is then placed upon the [non-movant] to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action.
 

 Pharmaresearch Corp. v. Mash
 
 ,
 
 163 N.C. App. 419
 
 , 424,
 
 594 S.E.2d 148
 
 , 151-52 (quotation marks and citations omitted),
 
 disc. review denied
 
 ,
 
 358 N.C. 733
 
 ,
 
 601 S.E.2d 858
 
 (2004).
 

 1.
 
 Trespass
 

 Plaintiffs first take issue with the trial court's grant of summary judgment on their trespass claim. Plaintiffs' trespass claim sought $1,100.00 from defendants, jointly and severally, for damages to plaintiffs' property resulting from Proland's alleged entry onto, and grading of plaintiffs' property to facilitate installation of the wall without plaintiffs' consent.
 

 Plaintiffs contend that the evidence, viewed in the light most favorable to them, is sufficient to support a claim for trespass. However, plaintiffs acknowledge that
 
 N.C. Gen. Stat. § 1-52
 
 (3) provides a three year statute of limitations for trespass running from the original trespass, and plaintiffs admit in their brief that "Proland's initial trespass occurred no later than April 25, 2014, which is more than three (3) years prior to May 17, 2017 (the date [p]laintiffs filed the [c]omplaint commencing this action)."
 
 [Brief
 

 *830
 

 11]
 
 In fact, Brown's own deposition testimony was that Proland first came onto his property without permission in August 2013. Brown further testified that Proland last came onto his property without permission in February 2014; but then contradicted himself by stating Proland returned to dump dirt at a later time that he was unable to specify.
 

 Despite conceding the complaint was filed more than three years after the original trespass, plaintiffs argue the statute of limitations was tolled to a later date because Proland promised to repair the damage caused by the trespass, began restoration work, and continued to promise additional restoration work until 2 June 2014. Thus, because the complaint was filed within three years of 2 June 2014 on 12 May 2017,
 
 *686
 
 plaintiffs contend the complaint was timely. Plaintiffs, however, acknowledge that they cannot find a case to support their tolling argument. Plaintiffs instead simply assert "there is no case saying that such tolling is not appropriate; and there are cases with respect to other claims where promises to perform, and partial performance, have been held to toll the applicable statute of limitations."
 

 We are not persuaded the tolling of the statutes of limitations for other types of claims applies to the tolling of the statute of limitations for a continuing trespass. We also could not find any case providing for the tolling of the limitations period for trespass. Instead, we are guided by the plain language of the statute, which provides a three year statute of limitations for trespass upon real property and explicitly states, "[w]hen the trespass is a continuing one, the action shall be commenced within three years from the original trespass, not thereafter."
 
 N.C. Gen. Stat. § 1-52
 
 (3) (2017).
 

 Because plaintiffs' trespass claim was filed more than three years after Proland's first unauthorized entry and grading of plaintiffs' property, the trespass claim was time barred. Consequently, the trial court did not err in granting summary judgment in favor of defendants on plaintiffs' trespass claim.
 

 2.
 
 Breach of Contract
 

 Plaintiffs also challenge the trial court's entry of summary judgment on count two for breach of contract. Plaintiffs presented their breach of contract claim for $1,100.00 in damages in the alternative to their trespass claim. Plaintiffs specifically alleged that "[they] permitted Proland to finish their work [on the wall] on the promise to repair [their property]; Proland breached their promise; and [p]laintiffs are entitled to recover damages for Proland's breach of contract."
 

 Although not explicitly alleged in the complaint, plaintiffs now clearly assert that a contract was formed when they allowed Proland to continue its work on the wall from their property in exchange for Proland's promise to restore their property after completion of the wall. Plaintiffs acknowledge that the contract did not specify a date for the completion of Proland's restorative work, but rely on
 
 International Minerals & Metals Corp. v. Weinstein
 
 ,
 
 236 N.C. 558
 
 , 561,
 
 73 S.E.2d 472
 
 , 474 (1952), for the proposition that the law requires performance of an obligation within a reasonable time in the absence of a specified time.
 

 Plaintiffs' argument on appeal is that there is sufficient evidence, when viewed in the light most favorable to them, that "Proland breached
 
 *687
 
 its contractual obligations by failing to restore [their property] within a reasonable amount of time, and by never proposing a scope of work that would, in fact, have restored [their property]."
 

 Like with their trespass claim, plaintiffs acknowledge that their breach of contract claim is limited by a three year statute of limitations provided in
 
 N.C. Gen. Stat. § 1-52
 
 (1). Plaintiffs, however, again contend the time to bring the claim did not begin to run until 2 June 2014, when they determined a reasonable amount of time had ended. Specifically, plaintiffs argue "the reasonable time for Proland to perform its contractual obligations ended on June 2, 2014; the date that Plaintiffs determined that a reasonable amount of time had passed; and that Proland had breached its contractual obligations." Based on their determination that a reasonable amount of time expired for Proland's performance on 2 June 2014, plaintiffs contend that the complaint filed on 17 May 2017 was timely. However, even if the breach occurred prior to 2 June 2017, plaintiffs contend
 
 *831
 
 the statute of limitations was tolled because Proland continued to promise restorative work.
 

 This Court has made clear that, pursuant to
 
 N.C. Gen. Stat. § 1-52
 
 (1), "[t]he statute of limitations for a breach of contract action is three years. The claim accrues at the time of notice of the breach."
 
 Henlajon, Inc. v. Branch Highways, Inc.
 
 ,
 
 149 N.C. App. 329
 
 , 335,
 
 560 S.E.2d 598
 
 , 603 (2002) ;
 
 see also
 

 Harrold v. Dowd
 
 ,
 
 149 N.C. App. 777
 
 , 781,
 
 561 S.E.2d 914
 
 , 918 (2002) ("The statute of limitations for a breach of contract claim begins to run on the date the promise is broken."). The question here is when the breach occurred to commence the running of the statute of limitations.
 

 We are not persuaded by plaintiffs' assertion that they are entitled to determine what constitutes a reasonable amount of time and thereby independently determine when a breach of contract occurs. If the issue came down to reasonableness, it would be an issue of fact that precludes summary judgment. However, email correspondence between plaintiffs and Proland entered into evidence in this case shows that the breach occurred at an earlier time.
 

 That email correspondence shows that Proland had begun, and continued restoration efforts to appease plaintiffs. However, an email from 24 April 2014 shows that plaintiffs were pondering legal action if Proland did not return their property to its original condition; and Proland's response shows that it was unable to return the property to its original condition. Specifically, plaintiffs wrote to Proland, in pertinent part, as follows:
 

 *688
 
 Do you intend to comply with our demand that our property be restored to its original contours .. [Sic] It seems clear that when you took this job that you knew you would have to remove part of our property to build the brick wall on the property line .... You made no attempt to discuss this with us or to try to make an arrangement with us that would have been acceptable to us. You just did it. We need to know your intent to determine if we need to take legal action.
 

 Proland responded, in pertinent part, as follows:
 

 After we took the large tree down at the front corner of the property, you and I met at the site and I explained how I wanted to slope the severe cut back to make it look right but I didn't want to grade your property without your consent. You were in agreement at that time. ... I am not sure what you mean by original condition because I can't replant the 60ft. tree that we removed. Even though the tree was on [the trust's property], the root ball of the tree was what disturbed your property when the tree was removed.
 

 Even though the email correspondence shows that Proland intended to continue restoration efforts until plaintiffs wrote them on 2 June 2014, "[d]on't bother we have hired a landscaper and we will take care of it[,]" it is clear from the email exchange on 24 April 2014 that Proland was not able to meet plaintiffs' demands. The breach of any agreement for Proland to restore the property to the original condition occurred at that time, and it is from that day, 24 April 2014, that the statute of limitations began to run. Accordingly, the claim for breach of contract in the complaint filed on 17 May 2017, more than three years after the cause of action accrued, was not timely. Therefore, the trial court did not err by entering summary judgment in favor of defendants on the breach of contract claim.
 

 3.
 
 Nuisance
 

 In plaintiffs' final claim for nuisance, plaintiffs alleged that the metal fence installed on the property line causes debris to accumulate and obstructs the flow of water in a drainage ditch that runs across the properties, resulting in unwanted erosion on plaintiffs' property. Plaintiffs further alleged that the accumulation of debris and redirection of the water "causes an unreasonable interference with [their] enjoyment and use of their property[.]" Plaintiffs sought damages or, alternatively, an injunction requiring the trust to move the fence.
 

 *689
 
 Plaintiffs now contend summary judgment on the nuisance claim was improper because, when the facts are construed in their favor, genuine issues of material fact
 
 *832
 
 exist. Defendants simply respond that there are no material issues of fact.
 
 [1]
 
 We agree with plaintiffs that material issues of fact preclude summary judgment on this claim.
 

 Our Supreme Court addressed the required showing for a nuisance claim brought by a private property owner against an adjacent private property owner who improperly diverted surface waters onto the plaintiff's property causing damage in
 
 Pendergrast v. Aiken
 
 ,
 
 293 N.C. 201
 
 ,
 
 236 S.E.2d 787
 
 (1977). In that case, the Court adopted "the rule of reasonable use with respect to surface water drainage" and expressed the rule as follows: "[e]ach possessor is legally privileged to make a reasonable use of his land, even though the flow of surface water is altered thereby and causes some harm to others, but liability is incurred when his harmful interference with the flow of surface waters is unreasonable and causes substantial damage."
 
 Id.
 
 at 216,
 
 236 S.E.2d at 796
 
 . The Court further explained the rule in
 
 Board of Transp. v. Terminal Warehouse Corp.
 
 ,
 
 300 N.C. 700
 
 ,
 
 268 S.E.2d 180
 
 (1980) :
 

 the doctrine of reasonable use adopted in
 
 Pendergrast
 
 defines the extent to which a private landowner may interfere with the flow of surface water on the property of another. This doctrine presupposes that all private landowners must accept a reasonable amount of interference with the flow of surface water by other private landowners if a fair and economical allocation of water resources is to be achieved. The conclusion reached in
 
 Pendergrast
 
 is that a rule of reasonable use with respect to water rights is the best way to promote the orderly utilization of water resources by private landowners.
 

 Id.
 
 at 705,
 
 268 S.E.2d at 184
 
 .
 

 *690
 
 In addition to announcing the reasonable use rule, the Court in
 
 Pendergrast
 
 described the inquiry that must be made, explaining that
 

 a cause of action for unreasonable interference with the flow of surface water causing substantial damage is a private nuisance action, with liability arising where the conduct of the landowner making the alterations in the flow of surface water is either (1) intentional and unreasonable or (2) negligent, reckless or in the course of an abnormally dangerous activity.
 

 ....
 

 Regardless of the category into which the defendant's actions fall, the reasonable use rule explicitly, as in the case of intentional acts, or implicitly, as in the case of negligent acts, requires a finding that the conduct of the defendant was unreasonable. This is the essential inquiry in any nuisance action.
 

 Pendergrast
 
 ,
 
 293 N.C. at 216-17
 
 ,
 
 236 S.E.2d at 796-97
 
 (citations omitted).
 

 Most importantly to this case when reviewing a grant of summary judgment, the Court explained that "
 
 [r]easonableness is a question of fact to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the conduct of the defendant.
 
 "
 
 Id.
 
 at 217,
 
 236 S.E.2d at 797
 
 (emphasis added). The court listed considerations in determining the gravity of the harm to the plaintiff and the utility of the conduct of the defendant, and then emphasized that,
 

 even should alteration of the water flow by the defendant be "reasonable" in the sense that the social utility arising from the alteration outweighs the harm to the plaintiff, defendant may nevertheless be liable for damages for a private nuisance if the
 
 *833
 
 resulting interference with another's use and enjoyment of land is greater than it is reasonable to require the other to bear under the circumstances without compensation. The gravity of the harm may be found to be so significant that it requires compensation regardless of the utility of the conduct of the defendant.
 

 Id.
 
 at 217-18,
 
 236 S.E.2d at 797
 
 (quotation marks and citations omitted).
 

 Plaintiffs argue the proper balancing could not be accomplished on defendants' motion for summary judgment. Defendants, however, contend plaintiffs have not established a substantial interference and point
 
 *691
 
 to evidence that Hernandez never used the portion of plaintiffs' property in question, Brown continues to enjoy his property, and the water diversion and erosion is only an issue during those infrequent times when there is lots of rain. Citing
 
 Whiteside Estates Inc. v. Highlands Cove
 
 ,
 
 LLC
 
 ,
 
 146 N.C. App. 449
 
 ,
 
 553 S.E.2d 431
 
 (2001),
 
 Duffy v. Meadows
 
 ,
 
 131 N.C. 31
 
 ,
 
 42 S.E. 460
 
 (1902), and N.C.P.I. -- Civil 805.25, defendants contend plaintiffs have only shown a slight inconvenience or petty annoyance, which is insufficient to support the nuisance claim. Defendants further contend there is nothing unreasonable about their construction of a fence along their property line.
 

 We disagree with defendants' argument. Defendant has essentially performed the fact finder's role by weighing and balancing the evidence. Where the evidence must be weighed and balanced, an issue of fact exists. We note that defendant has even cited the pattern jury instruction for "private nuisance" which puts to the jury the question of whether an interference is substantial, or merely a slight inconvenience or a petty annoyance.
 
 See
 
 N.C.P.I. -- Civil 805.25. This lends support to plaintiffs' argument that the reasonableness inquiry is ordinarily a question for the fact finder.
 

 Construing the evidence in this case in the light most favorable to plaintiffs, the balancing of the gravity of harm to plaintiffs with the utility of the fence to the trust that must be conducted under the reasonable use test adopted in
 
 Pendergrast
 
 was not appropriate for summary judgment. There was sufficient evidence to raise material issues of fact and, therefore, we reverse the trial court's grant of summary judgment in favor of defendants on plaintiffs' nuisance claim.
 

 III.
 
 Conclusion
 

 For the reasons discussed, we affirm the trial court's grant of summary judgment in favor of defendants on plaintiffs' trespass and breach of contract claims. However, we reverse the trial court's grant of summary judgment in favor of defendants on plaintiffs' nuisance claim, which presents material issues of fact to be determined under the reasonable use test set forth in
 
 Pendergrast
 
 .
 

 AFFIRMED IN PART, REVERSED IN PART.
 

 Judges BRYANT and DILLON concur.
 

 [1]
 

 Although our courts have held the statute of limitations for nuisance is the same as for trespass under
 
 N.C. Gen. Stat. § 1-52
 
 (3),
 
 see
 

 James v. Clark
 
 ,
 
 118 N.C. App. 178
 
 , 184,
 
 454 S.E.2d 826
 
 , 830,
 
 disc. review denied
 
 ,
 
 340 N.C. 359
 
 ,
 
 458 S.E.2d 187
 
 (1995), our courts have also long held that the diversion onto, or the pooling of water onto another's property is a recurring or renewing trespass, as opposed to a continuing trespass; therefore, the three year statute of limitations does not begin to run from the initial trespass.
 
 See
 

 Id.
 
 at 184-85,
 
 454 S.E.2d at
 
 830-31 ;
 
 Roberts v. Baldwin
 
 ,
 
 151 N.C. 407
 
 ,
 
 66 S.E. 346
 
 (1909) ;
 
 Duval v. Atlantic Coast Line R. Co.
 
 ,
 
 161 N.C. 448
 
 ,
 
 77 S.E. 311
 
 (1913) ;
 
 Whitfield v. Winslow
 
 ,
 
 48 N.C. App. 206
 
 ,
 
 268 S.E.2d 245
 
 ,
 
 disc. rev denied
 
 ,
 
 301 N.C. 405
 
 ,
 
 273 S.E.2d 451
 
 (1980),
 
 Wilson v. McLeod Oil Co.
 
 ,
 
 327 N.C. 491
 
 ,
 
 398 S.E.2d 586
 
 (1990),
 
 reh'g denied
 
 ,
 
 328 N.C. 336
 
 ,
 
 402 S.E.2d 844
 
 (1991). Thus, there is no statute of limitations argument with respect to the nuisance claim in this case based on the recurring trespass alleged in the complaint.